STATE OF NEBRASKA, APPELLEE, V. CAREY DEAN
MOORE, APPELLANT.

350 N.W.2d 14

Filed June 8, 1984.  No. 83-428.

Lathrop, Albracht & Lathrop, for appellant.

Paul L. Douglas, Attorney General, and J. Kirk
Brown, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS,
CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

This is a post conviction action following defendant's conviction of two counts of first degree murder, each in the perpetration or attempted perpetration of a different robbery.  On June 20, 1980, defendant was sentenced to death on each count.  The matter proceeded to this court for automatic review, and both judgment and sentence were affirmed in *State v. Moore*, 210 Neb. 457, 316 N.W.2d 33 (1982).

The present proceedings were initiated on June 29, 1982, by the filing of a motion to vacate and set aside defendant's conviction and sentence, pursuant to the Nebraska Post Conviction Act, Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1979).  The motion filed may be summarized as follows:  (1) Trial counsel was inadequate and incompetent; (2) Defendant was not accorded adequate notice of the aggravating and mitigating circumstances relied upon as a basis for imposing the death penalty; and (3) The Nebraska death penalty procedures are violative of the U.S. Constitution.

A change in counsel occurred between the filing of

the above motion and the time it was heard February 24 and April 27, 1983. No evidence was adduced at the hearings in support of the specific allegations set out in the motion, nor were those issues addressed in defendant's brief. This court is limited in its consideration to those assignments of error discussed in defendant's brief. *Flakus v. Schug*, 213 Neb. 491, 329 N.W.2d 859 (1983). Moreover, allegations (2) and (3) above were taken up on direct appeal, thus precluding any further review by this court. See, *State v. Hochstein*, 216 Neb. 515, 344 N.W.2d 469 (1984); *State v. Ohler*, 215 Neb. 401, 338 N.W.2d 776 (1983).

Although the question of adequacy of counsel is not discussed in defendant's brief, we have examined the record and find no evidence to support the charge of inadequate counsel. Defendant himself testified that he thought trial counsel "did a fine job." The evidence that was presented at the two hearings pertained to allegations that the defendant, as a result of being under the influence of tranquilizers, was not competent at the time of trial and did not knowingly and intelligently waive his right to a jury trial. No amended motion was filed containing these allegations which were presented for the first time, on the record, at the February 24, 1983, hearing. The district court found defendant failed to establish error which would render his conviction void or voidable under either the Nebraska or U.S. Constitution. Having reviewed the record, we affirm the lower court's order denying defendant's motion for post conviction relief.

We have stated on many occasions that a person seeking post conviction relief has the burden of establishing a basis for such relief, and the findings of the district court will not be disturbed on appeal unless they are clearly erroneous. *State v. Hochstein, supra; State v. Beans*, 212 Neb. 31, 321 N.W.2d 72 (1982). The evidence presented showed that defendant's trial counsel, Lawrence Corrigan, arranged for

a psychiatrist, Dr. Margaret Twiddle, to determine defendant's competency to stand trial. Both Dr. Twiddle and Dr. Mitchell, a psychologist, indicated to Corrigan that defendant was competent to stand trial. Neither Drs. Twiddle nor Mitchell testified at the post conviction proceedings. Medical records pertaining to the defendant are in the record. Defendant had been diagnosed by Dr. Twiddle as having "situational anxiety" due to stress and nervousness prior to the trial. On April 2, 1980, defendant began taking an antipsychotic medication, Mellaril, frequently referred to as a major tranquilizer. Defendant continued taking Mellaril until April 24, 1980, when Dr. Twiddle changed his prescription to a similar medication, Thorazine, which he took until June 20, 1980. Defendant waived his right to a jury trial at a hearing on April 7, 1980, 5 days after he started the medication.

Dr. Stan Moore, a psychiatrist, testified at the April 27, 1983, hearing for defendant, after reviewing the medical records and having interviewed defendant on March 11, 1983. He had no contact with defendant during the time he was under Dr. Twiddle's care. Dr. Moore described the possible side effects which one may incur, while taking Mellaril, as sedation, lethargy, blurry vision, dry mouth, stuffy nose, constipation, and dry skin. Thorazine exhibits basically the same side effects, according to the doctor's testimony, with the addition of such other rare side effects as skin discoloration, stiffness or shakiness, and an unusual effect on the liver. Dr. Moore testified that during the time defendant was under these medications, the only side effects documented were complaints of a dry mouth and congested nose. Dr. Moore further testified, in answer to a question from the court at the post conviction hearing, as follows:

THE COURT: Those are the only documented side effects outside of what the defendant told you in the spring of this year, and it's my under-

standing — I don't have a copy of the medical report, but it's — I mean, I realize it's going to be introduced in evidence, but I haven't had it in front of me during this testimony, but it is my understanding that you are not at this time able to give an opinion with reasonable medical certainty that the defendant was incompetent at the time of trial.

THE WITNESS: That's correct.

In addition to the documented complaints of a dry mouth and congested nose, the defendant testified that while taking the medications he was unaware of many things going on around him, and did not remember much of the trial or sentencing at all. He also stated the medication made him feel the same way he did when he sniffed glue as a child. Defendant did not lodge any complaints regarding his condition to trial counsel, and testified he first brought up this issue 3 to 4 weeks before the February 24, 1983, hearing.

According to defendant's own testimony, a jury was waived in the belief the trial court would be more lenient and not impose the death penalty. Defendant admitted on cross-examination that this strategy was a calculated move which ultimately did not reach fruition. The testimony also contains an opinion by defendant that his trial counsel, Mr. Corrigan, had done all he could for defendant, and upon questioning by the court, defendant could present nothing that would result in a different outcome should his case be retried.

Corrigan testified that he and defendant had approximately 15 conferences prior to the trial. At least three conferences dealt with waiving a jury trial in addition to strategy discussions on whether the defendant should take the stand and what other witnesses, if any, might be called to testify.

The record contains a transcript of a dialogue between defendant and counsel on April 11, 1980, during a break in the proceedings. The transcript indi-

cates the discussion occurred after the State had rested its case. In that discussion counsel explained to defendant his right to testify, and defendant indicated he understood. There was also a discussion on not putting on any evidence and resting after moving to dismiss. Counsel also reaffirmed the previous decision of waiving a jury, and the defendant agreed that it had been his (defendant's) decision and he wished to stick to it. Finally, the defendant responded in the negative when specifically asked by counsel if he had any complaints regarding his legal representation.

Corrigan testified that defendant appeared nervous prior to the trial and that he was aware defendant was on medication, but unaware of what specific medication. However, counsel's testimony is that defendant's ability to comprehend discussion between them had not changed from their first contact in the fall of 1979 to after sentencing in June of 1980. Defendant was instructed on more than one occasion by trial counsel to inform his psychiatrist or nurse if defendant was having any problems.

In reviewing the testimony from the two hearings, we are unable to agree with defendant that the trial court was clearly wrong in its finding. The treating physician was not called to testify, and Dr. Moore certainly was at a disadvantage in attempting to base his opinion on the medical records and an interview nearly 3 years after the fact, as evidenced by the cited dialogue above. The defendant himself states that other than the dry mouth and congested nose, the complaints of not remembering or "being out of it" were not made until shortly before the post conviction hearing. These complaints also could have been brought on direct appeal. Mr. Corrigan's testimony indicates that as far as he was concerned, defendant understood waiving the jury and knew what was occurring during the trial.

In determining the sufficiency of the evidence to sustain a denial of post conviction relief, this court

does not resolve conflicts in the evidence, pass upon the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact, and the trial court's decision must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. The defendant has the burden of establishing a basis for relief in a post conviction proceeding. *Marteney v. State*, 210 Neb. 172, 313 N.W.2d 449 (1981).

A review of the record before us leads this court to conclude that the trial court was not clearly wrong in determining defendant had not met the burden of establishing any error which would make his conviction void or voidable under either the Nebraska or U.S. Constitution. The trial court's order denying post conviction relief is affirmed.

AFFIRMED.

KRIVOSHA, C.J., concurring in part, and in part dissenting.

With the exception of that portion of the majority opinion which affirms the imposition of the death penalty, I concur in all that the majority has said, and believe that, but for the issue involving the imposition of the death penalty, Moore's claim for post conviction relief is without merit. However, because of my view regarding the imposition of the death penalty and its constitutional implications, as more particularly set out in my dissent in *State v. Moore*, 210 Neb. 457, 316 N.W.2d 33 (1982), I must again dissent from that portion of the majority opinion which, by affirming the trial court's denial of post conviction relief, affirmed the imposition of the death penalty in this case.