STATE OF NEBRASKA, APPELLEE,
v. CAREY DEAN MOORE, APPELLANT.
591 N.W. 2d 86

Filed April 2, 1999.   No. S-97-511.

Edward F. Fogarty, of Fogarty, Lund & Gross, and Larry W. Myers for appellant.

Don Stenberg, Attorney General, and J. Kirk Brown for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## I. NATURE OF CASE

Carey Dean Moore filed a motion for postconviction relief in the district court for Douglas County. The district court denied relief, without an evidentiary hearing, and Moore appealed. For the reasons stated herein, we affirm the judgment of the district court.

## II. FACTUAL BACKGROUND

In a 4-day span during August 1979, Moore robbed and murdered two Omaha taxi drivers. Moore was convicted of two counts of first degree murder, based on a felony murder theory, and was sentenced to death by a three-judge panel in 1980. We affirmed the convictions and sentence in *State v. Moore*, 210 Neb.. 457, 316 N.W.2d 33 (1982), *cert. denied* 456 U.S. 984, 102 S. Ct. 2260, 72 L. Ed. 2d 864 (*Moore I*). The facts of the underlying crimes are more fully set out in that opinion.

Moore filed his first state postconviction action in 1982, alleging, inter alia, that his trial counsel was ineffective and that Nebraska's death penalty procedures were unconstitutional. On appeal, we rejected these arguments. *State v. Moore*, 217 Neb. 609, 350 N.W.2d 14 (1984) (*Moore II*).

Moore then filed a federal habeas corpus action and was granted a writ of habeas corpus based upon his constitutional challenge to Nebraska's death penalty procedures. The U.S. Court of Appeals for the Eighth Circuit affirmed the order of resentencing, and this order was reaffirmed by the Eighth Circuit on denial of rehearing. *Moore v. Clarke*, 904 F.2d 1226 (8th Cir. 1990), *rehearing denied* 951 F.2d 895 (8th Cir. 1991), *cert. denied* 504 U.S. 930, 112 S. Ct. 1995, 118 L. Ed. 2d 591 (1992).

On remand, this court determined that it would decline to itself resentence Moore, but would instead remand the cause to the state district court for resentencing. *State v. Moore*, 243 Neb. 679, 502 N.W.2d 227 (1993) (*Moore III*). Moore was again

sentenced to death, and on direct appeal from his resentencing, he again alleged, inter alia, that Nebraska's death penalty statutes and procedures were unconstitutional. We rejected those arguments. *State v. Moore*, 250 Neb. 805, 553 N.W.2d 120 (1996), *cert. denied* 520 U.S. 1176, 117 S. Ct. 1448, 137 L. Ed. 2d 554 (1997) (*Moore IV*).

On March 3, 1997, this court set an execution date of May 9 for Moore. Moore filed the present state action for postconviction relief on April 30. On May 5, this court stayed Moore's execution in light of *Reeves v. Hopkins*, 102 F.3d 977 (8th Cir. 1996), *rev'd* 524 U.S. 88, 118 S. Ct. 1895, 141 L. Ed. 2d 76 (1998). On the same date, the district court denied Moore's motion for postconviction relief, without an evidentiary hearing. This appeal followed, and because this is a capital case, the appeal was placed on our docket. See Neb. Rev. Stat. § 24-1106 (Reissue 1995).

## III. ASSIGNMENTS OF ERROR

Moore alleges, restated, that the district court erred in (1) not concluding that Moore was denied due process of law as guaranteed to him by the 5th and 14th Amendments to the U.S. Constitution and article I, § 3, of the Nebraska Constitution because in determining innocence and guilt, the original trial court gave no consideration to lesser-included offenses to murder in the first degree and was not permitted to give consideration to lesser offenses by existing Nebraska case law; (2) not concluding that Moore was denied his right to effective assistance of counsel under the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution when at the original trial, his attorney allowed the waiver of a jury and thus lost the opportunity for instruction on lesser-included offenses to murder in the first degree and the right to preserve such error on appeal; (3) not concluding that Moore was denied his right to effective assistance of counsel, violating the federal and state Constitutions, when at his original trial, no defense was raised that Moore could be found guilty of a lesser offense than murder in the first degree and no particular effort was made to present evidence supporting such a theory; (4) not concluding that Moore was denied due process of law under the

federal and state Constitutions because the 1995 resentencing panel failed to give Moore advance notice of which definition of the "exceptional depravity" aggravator the panel would use; (5) not concluding that Moore was denied his right to effective assistance of counsel, violating the federal and state Constitutions, at his 1995 resentencing because if a constitutionally adequate definition of "exceptional depravity" was ascertainable from the case law, his counsel failed to ascertain it; (6) applying the "exceptional depravity" aggravator which, as recited in Neb. Rev. Stat. § 29-2523(1)(d) (Reissue 1995) and elaborated upon in case law and as fashioned by the sentencing court, remains vague and indefinite, in violation of the due process and freedom from cruel and unusual punishment protections provided to Moore by the 5th, 8th, and 14th Amendments to the U.S. Constitution and article I, §§ 3 and 9, of the Nebraska Constitution; and (7) not finding that Moore has been subjected to cruel and unusual punishment, in violation of his rights under the Eighth Amendment to the U.S. Constitution and under article I, § 9, of the Nebraska Constitution, by virtue of his long confinement in isolation on death row, the repeated death warrants issued and then stayed, and the delays essentially not caused by him, but, rather, by the State.

## IV. STANDARD OF REVIEW

A defendant moving for postconviction relief must allege facts which, if proved, constitute a denial or violation of his or her rights under the Nebraska or U.S. Constitution. *State v. Ditter*, 255 Neb. 696, 587 N.W.2d 73 (1998). A motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and could have been litigated on direct appeal. *Id.*

An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the state or federal Constitution. *State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998). However, an evidentiary hearing may be denied on a motion for postconviction relief when the records and files affirmatively show that the movant is entitled to no relief. See *id.*

## V. ANALYSIS

### 1. Ineffective Assistance of Trial Counsel

Moore's first three assignments of error all relate to the alleged ineffective assistance of counsel at his original trial. This argument, however, has already been addressed by this court. In his first postconviction action, *Moore II*, Moore based his postconviction motion in part on the assertion that his trial counsel was "inadequate and incompetent." *Id.* at 609, 350 N.W.2d at 15. This court stated that "we have examined the record and find no evidence to support the charge of inadequate counsel." *Id.* at 610, 350 N.W.2d at 16.

We have repeatedly stated that a motion for postconviction relief may not be used to obtain further review of issues already litigated. *State v. Burnett*, 254 Neb. 771, 579 N.W.2d 513 (1998); *State v. Lytle*, 224 Neb. 486, 398 N.W.2d 705 (1987); *State v. Rust*, 223 Neb. 150, 388 N.W.2d 483 (1986), *cert. denied* 481 U.S. 1042, 107 S. Ct. 1987, 95 L. Ed. 2d 826 (1987). See, also, *State v. Jones*, 254 Neb. 212, 575 N.W.2d 156 (1998), *disapproved on other grounds, State v. Silvers, supra*; *State v. Fletcher*, 253 Neb. 1029, 573 N.W.2d 752 (1998).

Moore's first three assignments of error were not only available to be raised in his first postconviction action, but they were raised and rejected in that action. If there is any basis for a claim of ineffective assistance of counsel that was not available to Moore at the time of his first postconviction motion, he does not identify it in the present case. Consequently, his claims relating to ineffective assistance of his trial counsel are procedurally barred, and we do not consider them here.

We additionally note that even if these arguments were not procedurally barred, all three assignments of error are premised on the alleged constitutional infirmity of the trial court's failure to give instruction on lesser-included offenses to felony murder. Since Moore's brief was filed, the U.S. Supreme Court has clarified that the U.S. Constitution does not require that the jury in a felony murder case be instructed as to lesser-included offenses where the crime, as defined by state law, does not include any lesser offenses. See *Hopkins v. Reeves*, 524 U.S. 88, 118 S. Ct. 1895, 141 L. Ed. 2d 76 (1998), *rehearing denied* ___ U.S. ___, 119 S. Ct. 5, 141 L. Ed. 2d 766. That being the case, even were

Moore's arguments not procedurally barred, they would be without merit.

## 2. EXCEPTIONAL DEPRAVITY AGGRAVATOR

### (a) Ex Post Facto Claim

Moore's fourth, fifth, and sixth assignments of error relate to the use of the aggravating circumstance of "exceptional depravity" to support his death sentence. See § 29-2523(1)(d). Again, we have previously addressed these arguments.

Moore alleged on direct appeal from his resentencing that the sentencing panel

> "committed reversible error by applying an unconstitutionally vague statutory aggravating circumstance . . . and by fashioning their [sic] own new definition of the aggravating circumstance in an ex post facto manner thereby depriving [Moore] of notice of the elements of the aggravating circumstance and further depriving him of the opportunity to respond and present evidence to rebut the facts necessary to establish the presence of the newly defined aggravating circumstance."

*Moore IV*, 250 Neb. at 815, 553 N.W.2d at 129-30. Moore's argument, essentially, was that the resentencing panel had redefined § 29-2523(1)(d) in a way that Moore was not prepared to rebut. While we noted that the resentencing panel had formulated new standards for § 29-2523(1)(d), we found that those standards were based on existing case law, and we determined that "because Moore received sufficient notice and an opportunity to present evidence at the resentencing hearing, there was no violation of due process." *Moore IV*, 250 Neb. at 826, 553 N.W.2d at 136.

In fact, we stated:

> Moore received even greater notice than constitutionally required. He knew from the Eighth Circuit's opinion in *Moore v. Clarke*, 904 F.2d 1226 (8th Cir. 1990), *cert. denied* 504 U.S. 930, 112 S. Ct. 1995, 118 L. Ed. 2d 591 (1992), that the scope of the exceptional depravity component of aggravating circumstance § 29-2523(1)(d) would be an issue in the resentencing proceedings. Thus, he

could hardly have been surprised when the resentencing panel *further narrowed* the definitions of exceptional depravity precisely along the lines suggested by the federal courts.

(Emphasis supplied.) *Moore IV*, 250 Neb. at 826, 553 N.W.2d at 135.

Moore's fourth assignment of error in the present action does nothing more than reiterate the ex post facto argument presented to and rejected by this court in *Moore IV*. In accord with the principles set forth above, Moore's fourth assignment of error is procedurally barred, and we do not consider it.

### (b) Ineffective Assistance of Counsel

Moore's fifth assignment of error, however, is not procedurally barred. The record reveals that the same attorney represented Moore at his 1995 resentencing hearing and on appeal from that resentencing. Moore alleges that this attorney provided ineffective assistance of counsel. This claim was not available to Moore on direct appeal, and this is Moore's first postconviction motion since his direct appeal from resentencing. Therefore, this is Moore's first opportunity to present the claim, and it is not procedurally barred.

When a defendant in a postconviction motion alleges a violation of his or her constitutional right to effective assistance of counsel as a basis for relief, the standard for determining the propriety of the claim is whether the attorney, in representing the accused, performed at least as well as a lawyer with ordinary training and skill in the criminal law in the area. Further, the defendant must make a showing of how the defendant was prejudiced in the defense of his or her case as a result of his or her attorney's actions or inactions. *State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998); *State v. Ditter*, 255 Neb. 696, 587 N.W.2d 73 (1998).

In the present case, we need not determine if Moore's attorney at resentencing was ineffective, because we find that Moore has not sufficiently shown how he was prejudiced by this alleged ineffectiveness.

Moore's argument is premised on our determination in *Moore IV*, 250 Neb. at 826, 553 N.W.2d at 135:

> [T]he resentencing panel's reformulation of the aggravating circumstance was accomplished by isolating the previous applications of the exceptional depravity prong of aggravating circumstance § 29-2523(1)(d). This is by definition a narrowing of the information which Moore had regarding this aggravating circumstance prior to the resentencing hearing. As such, it was neither unforeseeable nor did it expand the reach of that aggravating circumstance beyond information that Moore was on notice to prepare for concerning such aggravating circumstance.

Moore's claim is that since his attorney claimed on appeal that the definition of "exceptional depravity" was not ascertainable in advance, his attorney must have failed to foresee that which this court said was foreseeable and, therefore, that his attorney failed to effectively counsel him. Without commenting on the veracity of this claim, we find that even if we assume it to be true, Moore has identified no facts supporting a finding that Moore was prejudiced thereby.

Moore's claim in his motion for postconviction relief is simply that "if the definition of the aggravator was reasonably foreseeable as extrapolated from previous Nebraska Court decisions giving definition to the aggravator, counsel should have known of this possibility and by failing to do so provided ineffective assistance of counsel." In neither his petition nor his appellate brief does Moore claim how this alleged ineffectiveness in any way prejudiced him at resentencing.

Moore does not claim, for example, that his counsel failed to present, or was prevented from presenting, evidence rebutting salient aspects of the narrowed definition of "exceptional depravity" relied upon by the sentencing panel. Since *Moore I*, every sentencing panel and reviewing court has cited Moore's cold, calculated planning of the victims' deaths and, in particular, selection of the victims based on particular characteristics as *the* integral part of the exceptional depravity prong. The *Moore I* court quoted from the findings made by the sentencing panel, which findings were fully supported by uncontroverted evidence:

> "The defendant's own statements, in his confession to Officers O'Donnell and Thompson while in custody at

Charles City, Iowa, indicate that these crimes had been in the planning stage for at least a day or two before the Van Ness homicide. Apparently on the evening prior to the Van Ness murder, the defendant had called a number of cabs from a telephone booth somewhere on Farnam Street in the downtown Omaha area to see how quickly each would respond to his call. The defendant then hid somewhere in the vicinity to await each cab's arrival, at which time he checked the cab to determine whether the driver would be a suitable victim, i.e., not too young, since the defendant stated that it was easier for him to shoot an older man rather than a younger man nearer his own age. On the evening of the Van Ness homicide, the defendant's plan was to call one cab at a time from the Smoke Pit restaurant, and, if the driver who responded 'wasn't too old,' the defendant would just not identify himself as the fare for which the cab had been summoned. When Mr. Van Ness arrived at the Smoke Pit on August 22, 1979, the defendant determined that this was the driver who would be robbed and shot because 'he wasn't too young'.

"A similar pattern of events unfolded on August 26, 1979. The defendant went to the Greyhound Bus depot at 18th and Farnam Streets in Omaha that evening, and, when he saw a lone cab with an older driver parked at the taxi stand outside the depot, he got into the cab and directed the driver to take him to the Benson area. According to the defendant, this particular cab and driver were selected both because there were no other cabs at the taxi stand at the time, thus decreasing the chances of the defendant's being identified, and because the driver was an older man. The defendant then stated that, as previously discussed, he had planned ahead of time to rob and shoot the driver of whichever cab he selected." In his confessions the defendant stated that he killed each of the victims in order that the victim would not be able to identify him as the robber.

*Id.* at 461-62, 316 N.W.2d at 36-37.

Moore has not set forth in his motion for postconviction relief or in his brief what evidence he would present to rebut his

own confession or the narrowed definition of exceptional depravity utilized by the sentencing panel. Moore has had ample notice and opportunity to explain the circumstances or present mitigating evidence with reference to the cold, calculated planning of the victims' deaths, and he has failed to do so. Additionally, our review of the records and files presented provides us with no basis to show that Moore was prejudiced by any alleged ineffectiveness of counsel or that he is entitled to postconviction relief on this claim. We determine that Moore's fifth assignment of error is without merit.

### (c) Application of Exceptional Depravity

Moore's sixth assignment of error is that the district court "erred by applying the 'exceptional depravity' aggravator," because, as defined, it continues to violate the 5th, 8th, and 14th Amendments to the U.S. Constitution and article I, §§ 3 and 9, of the Nebraska Constitution. Brief for appellant at 7-8.

This assignment of error is without merit. First, in the present postconviction action, the district court did not "apply" the exceptional depravity aggravator. In fact, the underlying validity of § 29-2523(1)(d) is not even raised as an issue in Moore's motion for postconviction relief. To the extent that the assignment of error might erroneously refer to the "district court" where Moore intended to refer to the application of "exceptional depravity" by the 1995 resentencing panel, this issue was again not presented to the trial court in the present case. An issue not presented to or decided by the trial court is not an appropriate issue for consideration on appeal. *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998), *cert. denied* ___ U.S. ___, 119 S. Ct. 219, 142 L. Ed. 2d 180.

Even had Moore properly presented the underlying validity of § 29-2523(1)(d) to the trial court in this case, we note that the argument would be procedurally barred. The alleged infirmities of § 29-2523(1)(d), as applied, could have been, and were, raised as error on direct appeal from the resentencing. The precise argument raised here was rejected by this court in *Moore IV*. Even if properly presented to a postconviction court, Moore's arguments regarding § 29-2523(1)(d) are procedurally barred, as they were resolved against him on direct appeal.

*Moore IV.* Thus, Moore's sixth assignment of error is without merit.

### 3. *LACKEY* CLAIM

Moore claims that he has been subjected to cruel and unusual punishment by virtue of his now nearly 20-year confinement on Nebraska's death row. Essentially, Moore claims that it is cruel and unusual punishment to keep a person confined with the knowledge that he is to be executed and then to prolong that process pursuant to legal machinations. Moore's argument is completely without merit.

Arguments similar to Moore's have been raised in this country for nearly 40 years. See, *Chessman v. Dickson,* 275 F.2d 604 (9th Cir. 1960); *Andrews v. Shulsen,* 600 F. Supp. 408 (D. Utah 1984), *aff'd* 802 F.2d 1256 (10th Cir. 1986), *cert. denied* 485 U.S. 919, 108 S. Ct. 1091, 99 L. Ed. 2d 253 (1988), *rehearing denied* 485 U.S. 1015, 108 S. Ct. 1491, 99 L. Ed. 2d 718. The issue has most recently been revived in a memorandum opinion respecting a denial of certiorari by Justice Stevens, joined by Justice Breyer. *Lackey v. Texas,* 514 U.S. 1045, 115 S. Ct. 1421, 131 L. Ed. 2d 304 (1995). See, also, *Elledge v. Florida,* ___ U.S. ___, 119 S. Ct. 366, 142 L. Ed. 2d 303 (1998) (Breyer, J., dissenting from denial of certiorari); *Gomez v. Fierro,* 519 U.S. 918, 117 S. Ct. 285, 136 L. Ed. 2d 204 (1996) (Stevens, J., joined by Breyer, J., dissenting from denial of certiorari). In his memorandum opinion in *Lackey v. Texas, supra,* Justice Stevens noted his interest in the question whether prolonged confinement on death row could constitute cruel and unusual punishment and stated that one of the justifications for denying a writ of certiorari was so that the issue, having been called to the attention of appellants, could be considered by the lower courts prior to being addressed by the U.S. Supreme Court.

Other jurisdictions have considered the Eighth Amendment claim that long confinement on death row constitutes cruel and unusual punishment and have soundly rejected such claims. See, *Chambers v. Bowersox,* 157 F.3d 560 (8th Cir. 1998); *White v. Johnson,* 79 F.3d 432 (5th Cir. 1996), *rehearing and suggestion for rehearing en banc denied* 85 F.3d 627 (5th Cir.), *cert. denied* ___ U.S. ___, 117 S. Ct. 275, 136 L. Ed. 2d 198;

*Stafford v. Ward*, 59 F.3d 1025 (10th Cir. 1995), *cert. denied* 515 U.S. 1173, 115 S. Ct. 2640, 132 L. Ed. 2d 896; *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995), *cert. denied* 514 U.S. 1136, 115 S. Ct. 2019, 131 L. Ed. 2d 1017; *McKenzie v. Day*, 57 F.3d 1461 (9th Cir. 1995), *adopted on rehearing en banc* 57 F.3d 1493 (9th Cir.), *cert. denied* 514 U.S. 1104, 115 S. Ct. 1840, 131 L. Ed. 2d 846; *Williams v. Chrans*, 50 F.3d 1363 (7th Cir. 1995); *Porter v. Singletary*, 49 F.3d 1483 (11th Cir. 1995), *rehearing and suggestion for rehearing en banc denied* 58 F.3d 642 (11th Cir.); *Knight v. State*, 721 So. 2d 287 (Fla. 1998); *People v. Frye*, 18 Cal. 4th 894, 959 P.2d 183, 77 Cal. Rptr. 2d 25 (1998), *cert. denied* No. 98-7620, 1999 WL 150823 (U.S. Cal. Mar. 22, 1999); *State v. Schackart*, 190 Ariz. 238, 947 P.2d 315 (1997), *cert. denied* ___ U.S. ___, 119 S. Ct. 149, 142 L. Ed. 2d 122 (1998); *Ex Parte Bush*, 695 So. 2d 138 (Ala. 1997), *cert. denied* ___ U.S. ___, 118 S. Ct. 418, 139 L. Ed. 2d 320; *State v. Smith*, 280 Mont. 158, 931 P.2d 1272 (1996), *cert. denied* 522 U.S. 905, 118 S. Ct. 410, 139 L. Ed. 2d 314 (1997); *Bell v. State*, 938 S.W.2d 35 (Tex. Crim. App. 1996), *cert. denied* 522 U.S. 827, 118 S. Ct. 90, 139 L. Ed. 2d 46 (1997); *Stafford v. State*, 899 P.2d 657 (Okla. Crim. App. 1995), *cert. denied* 515 U.S. 1173, 115 S. Ct. 2640, 132 L. Ed. 2d 896.

In addition, a similar claim was presented to this court in *State v. Williams*, 253 Neb. 111, 568 N.W.2d 246 (1997), *cert. denied* 522 U.S. 992, 118 S. Ct. 555, 139 L. Ed. 2d 397. In that case, we noted that we had previously remanded the cause to the district court for additional factual findings and that in so doing, we had implicitly rejected the other errors assigned in the previous appeal. *Id.* The errors implicitly rejected included the appellant's *Lackey* claim. In that opinion, however, we did not discuss the reasoning behind our rejection of the argument. We find it appropriate to do so here.

Moore has not claimed that the State has set up a scheme to prolong the period of his incarceration or purposefully resentenced Moore in order to torment him. The delay in carrying out the sentence of death has been caused by the fact that Moore has availed himself of procedures our law provides to ensure that executions are carried out only in appropriate circumstances. That this differs from the practice at common law, where exe-

cutions could be carried out on the dawn following the pronouncement of the sentence, is a consequence of our evolving standards of decency, which prompt us to provide death row inmates with ample opportunities to contest their convictions and sentences. See *McKenzie v. Day, supra*. Indeed, most of these procedural safeguards have been imposed by the U.S. Supreme Court in recognition of the fact that the common-law practice of imposing swift and certain executions could result in arbitrariness and error in carrying out the death penalty. *Id.*, citing *Gregg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976), and *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972). We, therefore, hold that prolonged incarceration on death row, in and of itself, does not violate the Eighth Amendment to the U.S. Constitution. It would be a mockery of justice to conclude that delays caused by satisfying the Eighth Amendment themselves violate it.

Moore argues that the delay in this case was not caused by Moore's appeals, but by the State's legal maneuvers. However, as noted by the U.S. Court of Appeals for the Eighth Circuit in a similar case, "there is no evidence, not even a claim, that the State has deliberately sought to convict [the defendant] invalidly in order to prolong the time before it could secure a valid conviction and execute him." *Chambers v. Bowersox*, 157 F.3d 560, 570 (8th Cir. 1998). The record supports the fact that the State has not caused any intentional delay or sought to convict Moore invalidly in order to prolong the time before the sentence is carried out.

We are also mindful that sustaining Moore's claim would dramatically alter the calculus in granting stays of execution in death penalty cases. By and large, we have erred on the side of caution in granting stays of execution when death row inmates present claims that have not been given consideration by this court. The philosophy of erring on the side of caution would lose much of its vitality in a regime where the state risks being pushed permanently out of bounds if the execution is too long deferred by the process of adjudication. See *McKenzie v. Day*, 57 F.3d 1461 (9th Cir. 1995), *adopted on rehearing en banc* 57 F.3d 1493 (9th Cir.), *cert. denied* 514 U.S. 1104, 115 S. Ct. 1840, 131 L. Ed. 2d 846. Sustaining a claim such as Moore's,

under these circumstances, would wreak havoc with the just administration of the death penalty by placing a substantial premium on speed rather than accuracy.

Based on these considerations, we conclude that Moore has not stated a claim which, if proved, constitutes a denial or violation of his rights under the Eighth Amendment, and as we have previously indicated, with reference to cruel and unusual punishment, the Nebraska Constitution does not require more than does the U.S. Constitution. See, *State v. Michalski*, 221 Neb. 380, 377 N.W.2d 510 (1985); *State v. Brand*, 219 Neb. 402, 363 N.W.2d 516 (1985). Moore's final assignment of error is without merit.

## VI. CONCLUSION

For the foregoing reasons, we determine that all of Moore's assignments of error are either procedurally barred or without merit. Consequently, the judgment of the district court denying Moore postconviction relief is affirmed.

AFFIRMED.