STATE OF NEBRASKA, APPELLEE, V.
CAREY DEAN MOORE, APPELLANT.

730 N.W.2d 563

Order filed May 2, 2007.    No. S-95-485.

Alan E. Peterson, of Cline, Williams, Wright, Johnson & Oldfather, for appellant.

Jon Bruning, Attorney General, J. Kirk Brown, and Kimberly A. Klein for appellee.

HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and CASSEL, Judge.

GERRARD, J.

The court, on its own motion, has reconsidered its order for the issuance of a death warrant for Carey Dean Moore. Under Nebraska law, the mode of inflicting the punishment of death, in all cases, is "by causing to pass through the body of the convicted person a current of electricity of sufficient intensity to cause death."[1] In another case on our docket,[2] we have been asked to determine whether electrocution is cruel and unusual punishment.[3] And we have repeatedly noted that recent decisions of the U.S. Supreme Court at least raised the question whether electrocution is constitutional.[4] Our constitutional responsibility to decide whether electrocution is lawful requires us to consider whether any convicted person should be electrocuted before that question is answered. We conclude that we acted prematurely in ordering a death warrant before resolving that constitutional question in *State v. Mata*.[5] For the following reasons, we stay Moore's execution and withdraw the order of our clerk directing the warden of the Nebraska State Penitentiary to electrocute him.

In the context of capital sentencing, we have explained that it has "'long been settled'" that our jurisdiction "'"is not exhausted by the rendition of its judgment, but continues until

---

[1] Neb. Rev. Stat. § 29-2532 (Reissue 1995).

[2] *State v. Mata*, docket No. S-05-1268.

[3] See, U.S. Const. amend. VIII; Neb. Const. art. I, § 9.

[4] *State v. Gales*, 269 Neb. 443, 694 N.W.2d 124 (2005); *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003).

[5] *Mata, supra* note 2.

that judgment shall be satisfied." "[6] Notwithstanding the issuance of a mandate to a trial court or death warrant to the warden, we retain jurisdiction to set an execution date or suspend the execution of a death sentence.[7] And every court has the inherent power to control the execution of its orders or processes, to the end of preventing an abuse of them.[8]

Such power is not derived from legislative grant or specific constitutional provision, but from the very fact that this court has been created and charged by the state Constitution with certain duties and responsibilities.[9] Through this court's inherent judicial power, which is that power essential to the court's existence, dignity, and functions, we have authority to do all things that are reasonably necessary for the proper administration of justice.[10] And this includes supervisory power over the courts and the power to temporarily stay execution on judgments rendered by them whenever it is reasonably necessary to accomplish the ends of justice and prevent injustice.[11] Obviously, that inherent power extends to our own judgments and orders, including the death warrant in this case.

In deciding whether to exercise our inherent power, we are mindful of the "especial concern" that "is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different."[12] Our unique constitutional responsibilities impose a heightened standard of vigilance as we administer and supervise implementation of the death penalty. Moore's electrocution has been ordered by this

---

[6] *State v. Joubert*, 246 Neb. 287, 298, 518 N.W.2d 887, 895 (1994).

[7] See, *State v. Palmer*, 246 Neb. 305, 518 N.W.2d 899 (1994); *Joubert, supra* note 6; *Otey v. State*, 240 Neb. 813, 485 N.W.2d 153 (1992).

[8] *Ex parte State ex rel. Attorney General*, 150 Ala. 489, 43 So. 490 (1907).

[9] *In re Estate of Reed*, 267 Neb. 121, 672 N.W.2d 416 (2003); *Joubert, supra* note 6.

[10] See *id.*

[11] *Wassung v. Wassung*, 136 Neb. 440, 286 N.W. 340 (1939). See, also, *State, ex rel. Phoenix Loan Co. v. Marsh*, 139 Neb. 290, 297 N.W. 551 (1941).

[12] *Ford v. Wainwright*, 477 U.S. 399, 411, 106 S. Ct. 2595, 91 L. Ed. 2d 335 (1986).

court, and there can be no bureaucracy that discharges us from that responsibility.

There can be little question that Moore has received due process of law and has sought refuge in the courts before.[13] We recently ·declined to consider, on postconviction review, Moore's challenge to both the mode and protocol of execution in Nebraska.[14] Given the procedural posture of that case, and the uniquely limited scope of a postconviction proceeding, we correctly concluded that Moore's claims were barred.[15] But issuing a warrant ordering Moore to be electrocuted implicates different responsibilities for this court and places the case in a different procedural posture.

Had we properly considered those responsibilities at the time, we would not have ordered the issuance of a death warrant. As already noted, another case on our docket,[16] on a complete briefing and fully developed record, squarely presents us with the question whether electrocution is consistent with the prohibitions on cruel and unusual punishment imposed by the U.S. and Nebraska Constitutions. That case is scheduled for submission to this court in September 2007. While we have previously concluded that electrocution is constitutional, we have also noted a changing legal landscape that raises a question regarding the continuing vitality of that conclusion.[17] Were we to conclude that electrocution is no longer constitutional, then we would have undeniably permitted a cruel and unusual punishment only a few months earlier. The damage to Moore, and to the integrity of the judicial process, would be irreparable. It would be premature to permit this electrocution to proceed without the benefit of deciding, on a developed record, whether electrocution is a lawful punishment. And if we were to conclude that electrocution was cruel and unusual *after* Moore had been electrocuted, "our citizens' confidence in this court and the rest

---

[13] See, generally, *State v. Moore*, 272 Neb. 71, 718 N.W.2d 537 (2006).

[14] See *id.*

[15] See *id.*

[16] *Mata, supra* note 2.

[17] See, *Gales, supra* note 4; *Mata, supra* note 4.

of the judicial branch as a bastion of civil rights might suffer irreparable harm."[18]

The purpose of a stay is to prevent a state from doing an act which is challenged and may be declared unlawful in a pending proceeding.[19] The unique problem presented by this case is that Moore has not asked for a stay. But "[w]e simply are not permitted to avert our eyes from the fairness of a proceeding in which a defendant has received the death sentence."[20] It is a natural reaction for some to wish to be rid of an admitted murderer who asks to be executed.[21] We are nonetheless required to ensure the integrity of death sentences in Nebraska. In this case, that requires Moore to cede control of his defense to protect the public's interest in the integrity and fairness of capital proceedings.[22] Although we respect the defendant's autonomy, the solemn business of executing a human being cannot be subordinated to the caprice of the accused.[23] We must adhere to our heightened obligation to ensure the lawful and constitutional administration of the death penalty, regardless of the wishes of the defendant in any one case.[24] Concerns for finality to a state's judgments do not outweigh the absolute need to protect against the deprivation of an individual's constitutional rights which might invalidate his capital sentence.[25]

Finally, we observe that should Nebraska's mode of execution be found lawful, the State's interest in executing Moore's sentence would only have been delayed. When a stay of execution is granted, it is also within the inherent power of this court to

---

[18] See *State v. Ross*, 272 Conn. 577, 616, 863 A.2d 654, 676 (2005) (Norcott, J., concurring).

[19] *Joubert, supra* note 6.

[20] See *State v. Reddish*, 181 N.J. 553, 603, 859 A.2d 1173, 1203 (2004).

[21] *State v. Martini*, 144 N.J. 603, 677 A.2d 1106 (1996).

[22] See *Reddish, supra* note 20.

[23] See *id.*, citing *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

[24] See *id.*

[25] *Joubert, supra* note 6, 246 Neb. at 304, 518 N.W.2d at 898.

terminate that stay and set a date when the sentence shall be carried into execution. We have the power to set successive execution dates and issue death warrants as the circumstances may dictate.[26] If Nebraska's method of execution is constitutional, a new warrant is not precluded and will issue.

For the foregoing reasons, we order, adjudge, and decree that the execution of Moore be, and hereby is, stayed and that the warrant of our clerk dated March 21, 2007, directing the warden of the Nebraska State Penitentiary to execute Moore be, and the same hereby is, withdrawn.

EXECUTION STAYED, AND WARRANT WITHDRAWN.

WRIGHT, J., not participating.

---

[26] *Palmer, supra* note 7.

HEAVICAN, C.J., dissenting.

Initially, we note that state and federal courts have considered numerous cases concerning Moore's conviction, sentencing, and resentencing.[1] In his second postconviction action following his resentencing to death, Moore raised an Eighth Amendment challenge to execution by electrocution generally and to the electrocution procedure in the then newly adopted 15-second protocol. Moore requested an order declaring electrocution to be unconstitutional.

On appeal from the denial of his request, this court determined that Moore's constitutional challenge to electrocution as the state-mandated method of execution was procedurally barred because in his direct appeal following resentencing, he did not

---

[1] See, *State v. Moore*, 272 Neb. 71, 718 N.W.2d 537 (2006); *State v. Moore*, 256 Neb. 553, 591 N.W.2d 86 (1999); *State v. Moore*, 250 Neb. 805, 553 N.W.2d 120 (1996), *cert. denied* 520 U.S. 1176, 117 S. Ct. 1448, 137 L. Ed. 2d 554 (1997); *State v. Moore*, 243 Neb. 679, 502 N.W.2d 227 (1993); *State v. Moore*, 217 Neb. 609, 350 N.W.2d 14 (1984); *State v. Moore*, 210 Neb. 457, 316 N.W.2d 33 (1982), *cert. denied* 456 U.S. 984, 102 S. Ct. 2260, 72 L. Ed. 2d 864; *Moore v. Kinney*, 119 F. Supp. 2d 1022 (D. Neb. 2000), *affirmed* 320 F.3d 767 (8th Cir. 2003); and *Moore v. Clarke*, 904 F.2d 1226 (8th Cir. 1990), *rehearing denied* 951 F.2d 895 (8th Cir. 1991), *cert. denied* 504 U.S. 930, 112 S. Ct. 1995, 118 L. Ed. 2d 591 (1992).

appeal the district court's overruling of his motion challenging the constitutionality of the death penalty.[2] We further concluded that we could not reach Moore's challenge to the protocol because "Moore's electrocution procedure challenge would not constitute grounds for setting aside his sentence of death and would not 'render the judgment void or voidable,'"[3] a requirement for relief under Nebraska's postconviction statutes.

However, we specifically distinguished civil rights actions under 42 U.S.C. § 1983 (2000) from actions for postconviction relief and indicated that a challenge to the protocol may be available under § 1983. We discussed cases in which the U.S. Supreme Court held that a § 1983 action was an appropriate vehicle for a prisoner's Eighth Amendment challenge to a state's method of execution, seeking temporary and permanent injunctive relief against application of its procedures.[4] "A [civil rights] suit seeking to enjoin a particular means of effectuating a sentence of death does not directly call into question the 'fact' or 'validity' of the sentence itself—by simply altering its method of execution, the State can go forward with the sentence."[5] This type of action is not procedurally barred as the functional equivalent of a successive application for habeas corpus relief.

Despite our clarification of the proper method for challenging the means of execution, Moore has not filed a § 1983 action seeking to enjoin his execution until the State alters its protocol or adopts another means of execution. Moreover, Moore has recently filed a pleading in this court stating that he no longer wishes to challenge his sentence and further stating that "no filings are to be accepted by this court which are not prepared and filed by myself." Moore's statements and lack of action show that he has elected to waive his right to challenge the State's protocol.

---

[2] See *State v. Moore, supra* note 1, 272 Neb. 71, 718 N.W.2d 537 (2006).

[3] *Id.* at 80, 718 N.W.2d at 544.

[4] See, *Hill v. McDonough*, 547 U.S. 573, 126 S. Ct. 2096, 165 L. Ed. 2d 44 (2006); *Nelson v. Campbell*, 541 U.S. 637, 124 S. Ct. 2117, 158 L. Ed. 2d 924 (2004).

[5] *Nelson, supra* note 4, 541 U.S. at 644.

Through its inherent judicial power, this court has authority to do all things reasonably necessary for the proper administration of justice whether or not any previous form of remedy has been granted.[6] We have specifically stated that we have the inherent judicial power to set successive execution dates and issue death warrants.[7] However, in so doing, we must respect constitutional, jurisdictional, and jurisprudential restraints on our power to act.

Except in the exercise of its appellate jurisdiction, the Supreme Court is one of limited and enumerated powers.[8] Article V, § 2, of the Nebraska Constitution prohibits the original jurisdiction of the Supreme Court except for causes of action listed in that provision.[9] While it is not a constitutional prerequisite for jurisdiction, the existence of an actual case or controversy is necessary for the exercise of judicial power by a Nebraska state court.[10] There is no pending request in this case, and the Attorney General has filed an affidavit averring that Moore has no known pending actions in state or federal court. We know of no case in which a court suspended a state's executions outside of the court's authority to act in response to a request for relief in an existing case by the condemned person.[11]

We are aware of the Connecticut Supreme Court's decision in *In re Ross*,[12] in which petitioners—the public defender and

---

[6] *State v. Joubert*, 246 Neb. 287, 518 N.W.2d 887 (1994).

[7] *Id.*

[8] *State ex rel. Wieland v. Moore*, 252 Neb. 253, 561 N.W.2d 230 (1997).

[9] See *id.*

[10] *Johnston v. Nebraska Dept. of Corr. Servs.*, 270 Neb. 987, 709 N.W.2d 321 (2006).

[11] Compare, e.g., *Morales v. Tilton*, 465 F. Supp. 2d 972 (N.D. Cal. 2006) (discussing history of stays and evidentiary hearings conducted after condemned prisoner filed 42 U.S.C. § 1983 action challenging lethal injection procedures); *Provenzano v. Moore*, 744 So. 2d 413 (Fla. 1999) (holding that execution by electric chair did not constitute cruel and unusual punishment after court had issued stay for evidentiary hearing pursuant to condemned prisoner's petition for writ of habeas corpus, filed while he was under warrant of death).

[12] *In re Ross*, 272 Conn. 676, 866 A.2d 554 (2005).

father of Michael B. Ross—sought to stay Ross' execution and were denied relief. In an earlier case, the court had stated that Ross had not forfeited his ability to "exercise his right to file a petition for a writ of habeas corpus at any time and that, if he does so, the execution will be stayed."[13] Nonetheless, Ross specifically stated he did not wish to pursue such relief. The petitioners then sought postconviction relief on Ross' behalf. They argued that Ross could not waive his right to seek postconviction remedies and that his execution must therefore be stayed.

The court rejected, for lack of standing, the petitioners' attempt to gain next friend status to file the action on behalf of Ross and dismissed their motions to stay the execution. "It simply is unprecedented for this court to conclude that, although it has no jurisdiction over the case before it, it may act in that case to enter a stay in a separate proceeding."[14] The Connecticut Supreme Court further stated that the pendency of an unrelated unproven case in which the claim of systematic arbitrariness in the administration of the death penalty would not provide grounds for staying the death penalty in Ross' case.[15]

Since this court issued the death warrant, there have been no requests for relief to this court by Moore, nor has he rescinded his earlier request that no action be taken by this court in his case. In the absence of any such action, this court has no immediate basis to act and it is unprecedented to do so.

MILLER-LERMAN, J., and CASSEL, Judge, join in this dissent.

---

[13] *State v. Ross*, 272 Conn. 577, 580 n.2, 863 A.2d 654, 656 n.2 (2005).

[14] *In re Ross, supra* note 12, 272 Conn. at 679-80, 866 A.2d at 557.

[15] See *id.*

MILLER-LERMAN, J., dissenting.

There is no request for a stay or for other relief in the case before us. Mindful of the gravity of the matter, I write separately to note my concern at the issuance of a stay on the court's own motion. Further, I am not persuaded that the pendency of other unrelated cases which will be heard and decided in a future term stands as a barrier to proceeding with the sentence in this case at this time.