IN RE GUARDIANSHIP OF BEN L. BREMER, A PROTECTED PERSON. BERYL CARY, APPELLANT AND CROSS-APPELLEE, V. WILLIAM B. WEIR, GUARDIAN, APPELLEE AND CROSS-APPELLANT.

307 N.W.2d 504

Filed June 26, 1981. No. 43368.

Murphy, Pederson, Piccolo & Anderson for appellant.

Terry E. Savage for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

The appellant filed objections to the final account and petition for final settlement of the guardian of Ben L. Bremer, a protected person, and prayed that the guardian be surcharged for alleged breaches of fiduciary duties. The county court, after hearing, entered its order finding that there was no breach of fiduciary duty by the guardian and approved the final accounting and inventory and discharged the guardian from his trust. Attorney fees for representation of the guardian were denied. Appeal was taken to the District Court. The District Court affirmed the orders of the county court in all respects and this appeal followed.

On April 21, 1970, Ben L. Bremer filed a petition in the county court alleging that by reason of infirmities of age and physical disability he was unable to manage his estate and requested the appointment of William B. Weir as his conservator. The county court appointed Weir as conservator on the same day. Ben L. Bremer had four children, two sons, Duane and Byron, and two daughters, Duanne Deane Dixon and Beryl Cary, who were his only heirs. Beryl Cary is the appellant in this case.

Shortly after his appointment the conservator embarked on a project to convert three quarter sections of the Bremer farmland to irrigation. The county court, the ward, and the members of his family knew of the plan.

Two farm leases were made by the conservator, one with Edwin L. Fuehrer as lessee of two quarter

sections, and one with Byron Bremer which included one quarter section similar in nature to the Fuehrer quarters. The conservator filed a request for authorization to make such leases, and on January 15, 1971, the county court entered its order ex parte authorizing the conservator to make such leases. The Fuehrer lease was for 5 years beginning with the 1971 crop year and was for a cash rent of $1,500 per quarter section per year. The land had previously been leased on a crop share basis and Ben L. Bremer had been receiving approximately one-half of that amount per year. The term of the Byron Bremer lease and the cash rent per quarter section were identical to those of the Fuehrer lease. The appellant has raised no objections to the Byron Bremer lease and it is not in issue here.

At the time the leases were executed the conservator also negotiated a 5-year equipment lease for two center pivot irrigation systems between 3 Circle Irrigation, Inc., lessor, an irrigation company in which the conservator had an interest, and Fuehrer, as lessee. The evidence is that the court and the Bremer heirs were informed of the sprinkler leases. Fuehrer testified that he was not required to lease or purchase the sprinkler systems from anyone and that the equipment lease was in no way tied to the lease of the land. Fuehrer was unrelated to the Bremer family or to the conservator and was selected because of his farming ability.

A year or two after the Fuehrer equipment leases were executed the conservator and his brother terminated their interests in 3 Circle Irrigation, Inc., and became the owners of the Fuehrer equipment and thereafter earned a profit from the equipment lease.

In 1971 the conservator applied for and obtained court authorization to drill two irrigation wells on the land leased to Fuehrer and to install a well and pump at a total expense of approximately $18,000. In the spring of 1972 the conservator paid $1,100 to

level a portion of the land covered by the Fuehrer lease. In 1974 the conservator installed two stock wells at a cost of approximately $3,000, but the yearly Fuehrer rent was increased to amortize the cost of the stock wells.

The evidence is apparently undisputed that the ward, the heirs, and the court knew the terms of the 1971 lease and the facts of the irrigation expenditures during the period of that lease.

In 1975, several months before the 1971 leases were to expire, the conservator advised some of the Bremer family members that he anticipated renewing the leases to the same tenants. Duane Bremer then submitted a written bid to the county court offering to lease the two Fuehrer quarters for the sum of $4,000 per quarter per year. On May 29, 1975, the conservator wrote to all four of the Bremer heirs advising them that he intended to more than double the rentals payable under the Fuehrer and Byron Bremer leases, and specifically advising them that he expected to lease the two Fuehrer quarters to Fuehrer for the sum of $8,000 per year for an additional term of 5 years.

On June 3, 1975, the conservator executed a new lease for the two Fuehrer quarters for a term of 5 years beginning January 1, 1976, for a cash rental of $8,000 per year. That lease was also filed with the court, although the conservator did not request court approval. The conservator also renewed the Byron Bremer lease for 5 years. That portion of the lease which included the one quarter section similar in nature to the Fuehrer quarters was renewed at a cash rental of $4,000 per year.

At the time the conservator executed the 1975 Fuehrer lease he and his brother again leased the two pivot systems to Fuehrer for a term of 5 years at a slightly higher rental price.

On January 5, 1977, the conservator filed his petition and final account praying for approval of his acts and doings and his discharge as conservator. The petition

recited that the ward's infirmities had progressed and that a guardianship for a protected person was required, and prayed for the appointment of William B. Weir as the guardian. Ben L. Bremer and all the heirs were given due notice of the filing of the petition and of the date of hearing on the petition. On January 31, 1977, following hearing, the county court approved and allowed the final account of the conservator, allowed a final fee to the conservator, and ordered his discharge. The county court also appointed William B. Weir guardian of the person and estate of Ben L. Bremer and set his bond as guardian.

On July 12, 1977, Ben L. Bremer died. On February 9, 1978, William B. Weir filed his petition for final settlement and discharge as guardian. The appellant, Beryl Cary, filed objections to discharge and prayed that the guardian be surcharged for alleged breaches of fiduciary duty based upon the conservator's actions in connection with the two Fuehrer leases of 1970 and 1975. Testimony at trial was basically directed to the reasonable rental value of the land leased to Fuehrer at the respective times of the two leases. The appellant's expert witness, who had not previously appraised farm leases and who conceded that he sought opinions from unnamed persons in the area and found no comparable leases on file, testified that in his opinion the fair market rental for the 1970 lease would have been $10,600 per year, and that the fair market rental at the time of the 1975 lease would have been approximately $16,000 per year. The evidence for the guardian was that the rents were reasonable and were based upon the market price of leases of similar land in the area at the time.

The county court, in an oral opinion, found that the 1970 lease rental was unreasonably low but did not involve any breach of fiduciary duty. The court also found that the 1975 lease rental was reasonable, and also found that due to the actions of the conservator and guardian the entire assets of the estate had been very substantially increased.

On May 15, 1978, the court entered its written order finding that there was no breach of fiduciary duty by William B. Weir during the period of time he acted as conservator or guardian of the estate, approved the final accounting and inventory of the guardian, and discharged him from his trust. At a subsequent hearing the county court denied the guardian's request for allowance of an attorney fee for the defense of the objections.

On appeal the District Court found that the evidence did not show that the land was leased to Fuehrer as an inducement for the lease of the sprinkler systems and that the lease considerations for the land in the leases of 1970 and 1975 were fair, reasonable, and within the limits of the market. The District Court affirmed and approved all orders of the county court and this appeal followed.

The appellant's position is that the rentals fixed in the Fuehrer leases of 1970 and 1975 in the conservatorship were unreasonably low, and that the guardian may now be surcharged for his acts as a conservator because he accepted the leases as guardian which he had executed as conservator.

There can be no dispute but that all the affirmative actions of William B. Weir which are complained of by the appellant were done in his capacity as conservator. It is also clear that the court, the ward, and all of his heirs had actual notice of the existence and terms of both leases, and also had legal notice of the final accounting and petition for discharge of the conservator and of the appointment of the guardian.

The general rule in most jurisdictions is that a final settlement of the accounts of a guardian, executor, administrator, conservator, or other trustee judicially determined at a formal hearing of which all interested parties have notice is considered to be a judgment which becomes res judicata. See, 39 Am. Jur. 2d *Guardian and Ward* § 173 (1968); 39 C.J.S. *Guardian & Ward* § 165a (1976). Nebraska follows that rule.

An order of a county court approving a final settlement between a guardian and his ward can only be vacated on such proof of fraud as would justify the setting aside of any other judgment. *In re Guardianship of Protsman*, 136 Neb. 192, 285 N.W. 494 (1939). If the object of a petition is to set aside an order approving a final account between a guardian and his ward for fraud, it must allege some distinct and specific act of fraud from which petitioner suffered injury. It is also necessary that such petitioner negative all fault or negligence on his part. *Id.* at 195, 285 N.W. at 496. See, also, *In re Estate of Josephson*, 138 Neb. 193, 292 N.W. 595 (1940). There is no evidence of fraud in this record.

Appellant relies on *In re Guardianship of Phillips*, 144 Neb. 183, 13 N.W.2d 99 (1944). That case is clearly distinguishable. It is distinguishable on its facts because it involved an unauthorized investment made without statutorily required court approval, and the successor guardian accepted the assets with knowledge and without any accounting from the prior fiduciary. Even more importantly, the case is distinguishable because the ward was a minor and was incapable of challenging any accounting of the former guardian, even if one had been made. Under such circumstances, no issue of res judicata could have been involved.

Aside from the principles of res judicata, the evidence in the record in the present case supports the findings of both the county court and the District Court that there was no breach of fiduciary duties on the part of William B. Weir, either as conservator or as guardian. The judgment of the District Court approving the final account of the guardian and discharging him from his trust is fully supported by the evidence.

On cross-appeal the guardian contends that reasonable attorney fees should have been allowed from the guardianship assets for the services of the guardian's attorney in conducting the defense against the appellant's objections to his final account. The county

court disallowed any attorney fee on the basis that the defense was personal to the guardian and not for the benefit of the estate. The District Court also found that the guardian was defending in a personal capacity and that no statute or custom provides for attorney fees in such cases.

In the present case the guardian was not only acting as guardian of the person of Ben L. Bremer but was also acting as guardian of the estate of a protected person. In essence, he was acting not only as guardian of the person but, under appropriate protective order, as a special conservator under the provisions of Neb. Rev. Stat. § 30-2630 (Reissue 1979).

Neb. Rev. Stat. § 30-2643 (Reissue 1979) provides: "If not otherwise compensated for services rendered, any visitor, lawyer, physician, conservator or special conservator appointed in a protective proceeding is entitled to reasonable compensation from the estate." Even in the absence of such a specific statute, the county court has authority to allow reasonable fees to a fiduciary acting under the court's authorization and control for services reasonably required to be performed in connection with his fiduciary duties. While the allowance of an attorney fee to the guardian rests in the sound discretion of the court, the general rule is that a guardian or other fiduciary may be allowed attorney fees necessarily incurred in preparing his final account and in defending it against objections, and for any legal expenses necessarily incurred in asserting or defending the ward's rights. See, 39 C.J.S. *Guardian & Ward* § 164b (1976); 39 Am. Jur. 2d *Guardian and Ward* § 180 (1968).

In general, if the final order in the litigation involved finds the fiduciary guilty of a breach of duty or orders him to account to the estate, the estate is not liable for his attorney fees. If the fiduciary's defense of his acts is fully successful, he is ordinarily entitled to recover the reasonable costs necessarily incurred. In *Scully v. Scully*, 162 Neb. 368, 76 N.W.2d 239 (1956),

this court held that either the county court or the District Court on appeal ordinarily has discretionary power and authority to order payment of costs and, in proper cases, to order payment of reasonable fees to attorneys for services rendered a good faith trustee out of the trust estate in litigation. See, also, *Linn v. Linn*, 146 Neb. 666, 21 N.W.2d 283 (1946). To make a fiduciary personally responsible for all attorney fees reasonably incurred in the successful defense of his actions as fiduciary would impose an unconscionable burden on fiduciary service without justification.

The record in the present case shows that the county court denied "any further fee" to the guardian and for his attorney for services in connection with the objections to the final account. The record does not indicate what fees had previously been allowed, nor is there sufficient evidence of the nature and extent of the services involved upon which to base the determination of a reasonable fee in the county court.

The judgment denying the allowance of any fee to the guardian's attorney for services in connection with the appellant's objections was in error and, upon remand to the District Court, the District Court shall determine and allow a reasonable fee for the services of the guardian's attorney in the District Court; and upon further remand to the county court, the county court shall determine and allow a reasonable attorney fee for services in that court. The guardian's attorney is allowed a fee of $750 for services in this court. All attorney fees are payable from the assets of the guardianship estate. Costs are assessed to the appellant.

That part of the judgment of the District Court approving the final accounting of the guardian and discharging him from his trust is affirmed. That part of the judgment denying the allowance of attorney fees is reversed and the cause is remanded with directions.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.