IN RE TRUST CREATED BY H. WAYNE MARTIN, DECEASED.
U.S. BANK, N.A., APPELLEE AND CROSS-APPELLANT, V.
ANITA MARTIN-WALKER AND CLARK G. NICHOLS,
AS NEXT FRIEND FOR MEGAN WALKER ET AL.,
MINOR CHILDREN, OBJECTORS-APPELLANTS
AND CROSS-APPELLEES.

664 N.W.2d 923

Filed July 18, 2003.   No. S-01-1232.

Clark G. Nichols, of Nichols Law Office, for appellants Megan Walker et al.

Rhonda R. Flower, of Flower Law Office, for appellant Anita Martin-Walker.

John F. Simmons, of Simmons Olsen Law Firm, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

This case requires us to judge the investment decisions of a trustee against the standards established by Neb. Rev. Stat. §§ 30-2813 and 30-3201 (Reissue 1995). Anita Martin-Walker and her three minor children, Megan Walker, Kristin Walker, and Logan Walker (collectively the objectors), objected to the management of the assets of the H. Wayne Martin Trust by U.S. Bank, N.A. The objectors argued in the county court, as they do here, that they were damaged by the bank's selection of fixed income investments over equity investments. The county court rejected the objectors' claims, and we affirm.

## BACKGROUND

On April 19, 1989, Martin established the trust at issue in this case. Upon Martin's death, certain property was to be held by his successor trustees "as a separate trust and in further trust hereunder for the use and benefit of my daughter, ANITA J. MARTIN-WALKER." The trust further directed:

The income from the trust established for my daughter ANITA shall be paid in convenient installments, at least quarterly, to her for the remainder of her lifetime.

. . . .

. . . My successor trustees may also pay to or for the benefit of my daughter ANITA such sums from principal as my successor trustees deem necessary or advisable from time to time for her health, maintenance in reasonable comfort and best interests, considering her other income and means of support from all sources known to my successor trustees.

. . . .

. . . Upon the death of my said daughter ANITA J. MARTIN-WALKER . . . my successor trustees shall

distribute the remaining trust estate as then constituted to her then living descendants . . . .

Martin died on August 25, 1989. Pursuant to the trust, Martin-Walker and the bank became cotrustees of the trust and assumed control of the trust assets. One of the assets originally included in the trust was a farm, while the remaining assets were invested in fixed income investments. The decision to invest in fixed income investments was consistent with the bank's determination that the objective of the trust was to provide maximum income to Martin-Walker. The farm was sold in 1993, at which point 100 percent of the trust assets were invested in fixed income investments. Also in 1993, the bank sold a number of assets described as private placements or limited partnerships. The value of these assets had been substantially diminished by a change in the Internal Revenue Code, and the bank decided to sell them in part because they were no longer deemed to be trust-quality assets. These assets, however, were sold for amounts in some cases of less than the annual income they produced.

After the sale of the farm, the trust continued to be invested entirely in fixed income investments until August 1994, when the bank began investing in equities. As of August 1996, approximately 14 percent of the trust assets were invested in equities, with the remainder still invested in fixed income investments.

The trust provided Martin-Walker with the power to remove the bank as cotrustee, a power she exercised on November 8, 1996. Earlier that year, Martin-Walker had expressed her dissatisfaction with the performance of the trust, particularly with the lack of growth of the trust principal. Having been removed as a cotrustee, the bank transferred the assets to Martin-Walker's newly designated cotrustee. The bank filed its petition for final accounting in the county court on December 4, 1997. Martin-Walker filed an amended objection to the bank's petition. She alleged that the bank failed to invest the trust assets as a prudent person would by failing to invest in a manner which would have produced growth of the trust principal. As a result, Martin-Walker alleged that the beneficiaries of the trust suffered damages. Martin-Walker's three minor children objected on identical grounds. In its response, the bank alleged, among other things,

that the objections were barred by Neb. Rev. Stat. § 30-2818 (Reissue 1995).

The county court undertook the issues raised in two stages. On April 14, 1999, the court concluded that § 30-2818 did not bar the objections. The court found, in part, that the beneficiaries of the trust did not receive a final account or other statement fully disclosing the matter in question 6 months or more before the beneficiaries asserted their claim. On July 24, 2001, the county court rejected the objectors' claims and approved the bank's final accounting, concluding that the bank did not abuse its discretion in selecting fixed income investments over equity investments. However, the court did not approve of the bank's liquidation of the private placements and limited partnership assets. The court found that the bank unilaterally decided to liquidate these assets without regard to their historical and potential income production. The court found that this action was an abuse of discretion and that the bank took this action for its own convenience. The court declined to award damages on this issue, however, because no evidence of damages was presented and any award would be speculative.

Subsequently, the court overruled the objectors' motion for new trial. The court also overruled the bank's motion for attorney fees, concluding that because the bank breached its duty with regard to the private placements and limited partnerships, the bank was not fully successful in defending its actions. The objectors filed this appeal, and the bank cross-appeals.

## ASSIGNMENTS OF ERROR

The objectors assign that the county court erred in (1) finding that the bank had discretion as to whether or not to invest the assets of the trust in accordance with §§ 30-2813 and 30-3201, (2) failing to find that the beneficiaries of the trust were damaged by the breach of fiduciary duty on the part of the bank in failing to invest and manage the assets of the trust in accordance with §§ 30-2813 and 30-3201, and (3) overruling the objectors' motion for new trial.

On cross-appeal, the bank assigns that the county court erred in (1) failing to hold that the objectors' claims were barred by the statute of limitations and (2) failing to award attorney fees and expenses.

## STANDARD OF REVIEW

In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. *In re Estate of Krumwiede*, 264 Neb. 378, 647 N.W.2d 625 (2002). In a bench trial of a law action, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. *Id.* In reviewing the judgment awarded by the probate court in a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Id.*

When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Fox v. Nick*, 265 Neb. 986, 660 N.W.2d 881 (2003).

On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. *Rapp v. Rapp*, 252 Neb. 341, 562 N.W.2d 359 (1997).

## ANALYSIS

The objectors argue that the bank failed to invest and manage the assets of the trust in accordance with §§ 30-2813 and 30-3201. Specifically, the objectors contend that the bank had a duty to invest the trust assets in a manner which would balance the interests of the income beneficiary and the remainder beneficiaries. They argue that the bank violated that duty by investing the trust assets in predominately fixed income investments. The objectors claim that the bank should have invested the trust assets in investments that would grow the trust corpus for the benefit of the remainder beneficiaries, or at least protect the real value of the corpus.

Section 30-2813 provided in relevant part:

Except as otherwise provided by the terms of the trust, the trustee shall observe the standards in dealing with the trust assets that would be observed by a prudent man dealing with the property of another, and if the trustee has special skills, or is named trustee on the basis of representations of special skills or expertise, he is under a duty to use those skills.

A prudent person, for purposes of § 30-2813, is defined as "a trustee whose exercise of trust powers is reasonable and equitable in view of the interests of income or principal beneficiaries, or both, and in accordance with the standards of care provided for trustees in section 30-2813." Neb. Rev. Stat. § 30-2819(2) (Reissue 1995).

Section 30-3201 similarly provided in relevant part:

> Except as may be otherwise provided . . . by law or by the instrument creating the fiduciary relationship involved, each and every trustee . . . having funds for investment shall invest the same in investments of the nature which men of prudence, discretion, and intelligence acquire or retain in dealing with the property of another, and if the trustee . . . has special skills or is named as fiduciary on the basis of representations of special skills or expertise, he is under a duty to use those skills.

These rules are applicable in this case because all of the bank's decisions and actions concerning the trust occurred prior to September 13, 1997. We note that trustee actions and decisions occurring after that date are governed by the "prudent investor rule" as codified by the Nebraska Uniform Prudent Investor Act, Neb. Rev. Stat. § 8-2201 et seq. (Reissue 1997).

The Restatement (Second) of Trusts § 232, comment *b*. at 555-56 (1959), has commented on the somewhat antagonistic interests of income and remainder beneficiaries:

> *Duty to each of successive beneficiaries.* If by the terms of a trust the trustee is directed to pay the income to a beneficiary during a designated period and on the expiration of the period to pay the principal to another beneficiary, the trustee is under a duty to the former beneficiary to take care not merely to preserve the trust property but to make it productive so that a reasonable income will be available for him, and he is under a duty to the latter beneficiary to take care to *preserve* the trust property for him.
>
> Although the trustee is not under a duty to the beneficiary entitled to the income to endanger the safety of the principal in order to produce a large income, he is under a duty to him *not to sacrifice income for the purpose of increasing the value of the principal.* Thus, the trustee is

under a duty to a life beneficiary not to purchase or retain unproductive property or property which yields an income substantially lower than that which is normally earned by trust investments, although it is probable that the property will appreciate in value. . . .

On the other hand, the trustee is under a duty to the beneficiary who is ultimately entitled to the principal not to purchase or retain property which is certain or likely to depreciate in value, although the property yields a large income, unless he makes adequate provision for amortizing the depreciation.

(Emphasis supplied.)

These principles were applied in *Tovrea v. Nolan,* 178 Ariz. 485, 875 P.2d 144 (Ariz. App. 1993), a case which is identical to the present case in all relevant respects. In *Tovrea,* a husband's will created a trust and named his wife as the life beneficiary of the trust income and his children as the remainder beneficiaries. The children brought suit against the trustees, arguing, among other things, that the trustees failed to invest the trust assets prudently. The Arizona Court of Appeals rejected the children's arguments:

[The children's] claim that [the trustees] had a duty to make growth investments to protect the principal against inflation, based on the trustees' duty to treat the income and remainder beneficiaries impartially, contravenes both the terms of Tovrea's will and the law. Tovrea's will provided that the net income of the trust was to be paid to, or for the benefit of, [his wife], and also authorized the trustees to invade and apply the principal for [his wife's] benefit "at such times and in such amounts as they shall determine, in their sole and absolute discretion, that she may benefit from additional funds to maintain her health, education and general welfare." Clearly, Tovrea intended that the trust provide for [his wife], even at the expense of principal. Furthermore, because this trust was to provide her a lifetime income, the *trustees could not sacrifice income in order to increase the value of the principal. In re Frances M. Johnson Trust,* 211 Neb. 750, 320 N.W.2d 466 (1982); Restatement (Second) of Trusts, § 232, comment b (1956). *The trustees' duty was to*

*invest in such a manner as to produce an income for [his wife] and, secondarily, preserve the principal. See id.*; [IIIA Austin Wakeman Scott & William Franklin Fratcher,] Scott on Trusts § 232 (4th ed. 1988).

(Emphasis supplied.) *Tovrea v. Nolan*, 178 Ariz. at 490, 875 P.2d at 149.

The trust established by Martin provided for the payment of trust income to Martin-Walker for her lifetime. It further authorized the trustees to invade the principal for her "health, maintenance in reasonable comfort and best interests." We cannot say that the bank violated the standards codified in §§ 30-2813 and 30-3201 by investing the large majority of trust assets in fixed income investments rather than investing the trust assets in equity investments which, without the benefit of hindsight, may have endangered the integrity of the trust principal. We conclude that the bank's actions in investing the preponderance of the trust assets in fixed income investments rather than equity investments conformed to the applicable standards of §§ 30-2813 and 30-3201.

■ Having rejected the objectors' arguments on appeal, it is unnecessary to address the bank's first assignment of error on cross-appeal. However, the bank also assigns that the county court erred in failing to award attorney fees. As a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Kansas Bankers Surety Co. v. Halford*, 263 Neb. 971, 644 N.W.2d 865 (2002). Prior to our decision in *Rapp v. Rapp*, 252 Neb. 341, 562 N.W.2d 359 (1997), the law in Nebraska provided:

In general, if the final order in the litigation involved finds the fiduciary guilty of a breach of duty or orders him to account to the estate, the estate is not liable for his attorney fees. If the fiduciary's defense of his acts is *fully successful*, he is ordinarily entitled to recover the reasonable costs necessarily incurred.

(Emphasis supplied.) *In re Guardianship of Bremer*, 209 Neb. 267, 274, 307 N.W.2d 504, 509 (1981).

■ In *Rapp*, we modified that standard in part. We held that a fiduciary's defense need not be 100 percent successful in order

for the fiduciary to be entitled to recover costs, including attorney fees. Instead, a fiduciary is entitled to recover reasonable costs necessarily incurred in preparing his or her final account and defending it against objections if the fiduciary's defense is *substantially successful. Rapp v. Rapp, supra.* However, our decision in *Rapp* left undisturbed the principle that if a fiduciary is found guilty of a breach of duty or the court orders the fiduciary to account to the estate, the estate is not liable for the fiduciary's attorney fees. See *In re Guardianship of Bremer, supra.*

In this case, the county court denied the bank attorney fees based on its findings that the bank breached its duty in the disposition of the private placements and limited partnerships. The bank has not taken exception with these findings on cross-appeal. Under *In re Guardianship of Bremer, supra*, the bank's breach of duty with regard to the private placements and limited partnerships precludes an award of attorney fees. We conclude that the county court's decision denying the bank attorney fees was not an abuse of discretion.

## CONCLUSION

Under Nebraska law, the bank's decisions and actions regarding the investment of the trust assets complied with the applicable standards of §§ 30-2813 and 30-3201. We therefore affirm the order of the county court approving the bank's final accounting. We also affirm the county court's order denying the bank attorney fees.

AFFIRMED.