IN RE ESTATE OF MAMIE G. REED, DECEASED.
VELMA M. COOK, PERSONAL REPRESENTATIVE, APPELLEE, AND
RICHARD A. ROWLAND, APPELLANT, V. JOHN E. LYNCH,
SUCCESSOR PERSONAL REPRESENTATIVE, APPELLEE.
672 N.W.2d 416

Filed December 19, 2003. No. S-01-1195.

Richard A. Rowland, of Wright & Associates, pro se.

Jay A. Ferguson for appellee John E. Lynch, and John E. Lynch, pro se.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

This appeal arises from a probate matter wherein the county court removed the personal representative and her attorney, appointed a successor personal representative, and assessed costs against the former personal representative and her attorney. The Nebraska Court of Appeals reversed the order assessing costs, see *In re Estate of Reed*, 11 Neb. App. 915, 663 N.W.2d 147 (2003), and this court granted the successor personal representative's petition for further review.

## SCOPE OF REVIEW

■ In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. *In re Trust Created by Martin*, 266 Neb. 353, 664 N.W.2d 923 (2003).

■ When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id.*

## FACTUAL BACKGROUND

Velma M. Cook was appointed personal representative of the estate of Mamie G. Reed on February 12, 1996. Richard A. Rowland filed documents on Cook's behalf in his capacity as her attorney. The short-form inventory indicated that the estate consisted of a house located in Omaha, Nebraska, with a market value of approximately $9,000, as well as miscellaneous furniture and appliances with a market value of $100.

On June 18, 1998, this court issued a directive concerning case progression standards for probate cases. The document, which was captioned "Directive To All County Courts," provided in relevant part as follows:

In all probates not completed within 24 months, the county court shall order the personal representative to show cause why the probate should not be closed within 3 months or the personal representative removed and a new personal representative appointed. Upon removal of the personal representative, the county court shall appoint a new personal representative, who shall proceed forthwith to complete the administration of the probate. The county court shall tax the costs of completion of the administration to the former personal representative and his or her attorney.

In keeping with our directive, the county court issued an order to show cause on August 25, 1998, which ordered Cook to file closing documents by August 31 or show cause why the estate had to be kept open longer. The order to show cause provided in part:

In the event of failure to file the closing documents or file the detailed report by the deadline the personal representative shall be removed and powers terminated without further notice and the costs and accruing costs taxed to the personal representative and to his or her attorney, including and not limited to the successor personal representative's fees and his or her attorney's fees.

On August 31, 1998, Cook filed the following response to the August 25 order via Rowland, her attorney:

The sole property of the estate is a residence at 1606 Laird Street, Omaha, Nebraska. Said property has been held for

sale by the Personal Representative but only one offer of $9,900 has been received. The prospective buyer was unable to obtain a loan and the sale did not take place. Unfortunately, the home was not in good repair at the time of death of . . . Cook's mother, Mamie Reed, and the heirs don't have the funds to bring the home up to A-one status. However, the[y] do not wish to give the property away either. The current assessed value is $8,300 [and] gives a reasonable sale value of between $9,000 to $10,000. It is requested the estate be continued for an additional 90 days for closure and if sale is not realized within the next 60 days, the property will be deeded and distributed to the heirs and the estate closed.

Without further notice or hearing, the county court entered an order on March 10, 1999, removing Cook as the personal representative and appointing John E. Lynch as successor personal representative. The order provided that "[a]ny and all costs incurred by . . . Lynch in his fiduciary capacity shall be taxed jointly and individually" to Cook and Rowland.

On March 11, 1999, Rowland filed a motion to amend the county court's order of March 10 for the following reasons:

1. That the undersigned has kept the Court informed of his unsuccessful attempts to contact [Cook] in this matter.

2. That the undersigned personally contacted the Court informally on this matter to discuss withdrawal or other positive action that could be taken by the attorney, that [the county court judge] requested that he not withdraw and that at the end of the continuance the Court would order the removal of [Cook] or take other appropriate action.

3. That the only property of the estate is the residence at 1606 Laird Street, Omaha, Nebraska[,] which, is believed to be lived in by a disabled relative, that the property has minimal value and [Cook] and her siblings believe should be left as is.

4. That numerous letters (attached hereto) have been sent to . . . Cook in an effort to complete the estate, that in addition the undersigned has attempted to communicate by telephone and on two occasions has attempted to contact . . . Cook by a personal visit to her home and to the estate

residence. No one answered at either location and messages were left requesting . . . Cook contact the undersigned. A neighbor of . . . Cook's was further contacted on one visit and requested to have . . . Cook make contact all to no avail.

5. That the undersigned received only an initial payment of $100.00 in this matter.

WHEREFORE, the undersigned moves this Court to amend the Order of March 10, 1999, in this matter by removing him from responsibility for costs in this matter.

This motion was scheduled for hearing on April 6, 1999. The bill of exceptions for the hearing provides as follows: "(A hearing date of 4/6/99 was requested to be part of this bill of exceptions. However, since this hearing was not tape recorded it cannot be included as part of this bill of exceptions.)"

The only record of what transpired at the April 6, 1999, hearing is subsequent testimony by Rowland, who stated: "Well I asked [the county court judge], obviously, to overrule the motion and to take me off of it. And I guess I made some arguments pertaining to his conversation that went back to the — the courthouse steps of reminding him of what he said." There is no record of the county court's ruling on the motion to amend the March 10 order.

Subsequently to the appointment of Lynch as successor personal representative, the county court issued another order to show cause to Cook and Rowland, directing Cook to close the estate and pay any court costs due on or before May 13, 1999. Upon failure to do so, Cook was ordered to appear on or before May 13 before a judge in the probate division of the county court. The order provided that failure to comply with this order would result in her removal without further notice and would subject her to sanctions for contempt of court. No further action on this order to show cause appears in the record. On April 8, letters of personal representative were issued to Lynch.

In April 1999, Lynch wrote to Rowland, Cook, and Reed's heirs, advising them that the administrative costs, filing fees, and court costs would be between $300 and $500. Lynch estimated his attorney fees would be at least $1,500. He advised that the assets in the estate appeared to be insufficient to pay the expenses

and that one of two things needed to occur within the next 60 days. The first option was for the family to contribute money to the estate to pay outstanding bills. Ownership of the house could then be deeded to the family members, and the estate could be closed. The second option was to sell the house as soon as possible, use the proceeds to pay the bills, and distribute the remaining assets to the heirs. Lynch estimated that the house was worth between $5,000 and $10,000 and that there would be at least $2,000 in expenses. He requested that the heirs contact him by April 16. The heirs failed to respond.

Lynch learned on May 6, 1999, that there was a foreclosure proceeding pending against the real estate in Reed's estate. Lynch knew that the property was occupied, but he was not familiar with the occupant. He subsequently learned that a hearing on the foreclosure was set for May 25. He was unsuccessful in obtaining a continuance of the foreclosure, and therefore, on May 24, the estate filed a petition in bankruptcy to stop the foreclosure. The purpose of filing bankruptcy was to stall the foreclosure until the house could be sold. At the time the bankruptcy petition was filed, there were liens against the property in the amount of $5,922.03.

An order was entered in the U.S. Bankruptcy Court for the District of Nebraska on July 16, 1999, dismissing the petition in bankruptcy. The occupant was evicted from the house, and Lynch subsequently sold it for $8,000. Of that sum, $6,338 was required to satisfy liens against the property. After all expenses were paid, the estate balance was $503.95.

During 2000, various motions, which are too numerous to set forth in detail, were filed by Cook, Rowland, and Lynch. On February 10, Lynch filed an application for surcharge requesting $4,370 in fees, $903.05 in administrative costs, and $185 in publication costs. This application spawned further motions filed by Cook and Rowland.

Cook and Rowland sought to have the county court declare that this court's directive of June 18, 1998, is unconstitutional. On October 17, 2000, the county court overruled the motion and dismissed a counterclaim filed by Cook against Lynch. On November 17, Cook filed an appeal with the Court of Appeals from the county court's order overruling the motion to determine

this court's directive unconstitutional and from the ruling dismissing the counterclaim filed by Cook. This appeal was dismissed by the Court of Appeals. See *In re Estate of Reed*, 10 Neb. App. xxii (No. A-00-1177, May 22, 2001).

In August 2001, Lynch filed a supplemental application for attorney fees of $9,044 and administrative costs of $1,158.05, plus additional administrative costs in the amount of $113.50 and an expert witness fee in the amount of $1,000. Lynch requested attorney fees and costs for an additional attorney hired by Lynch in the amount of $4,623.09, for a total sum of $15,938.64. This application was heard in the county court on September 27. The record of this hearing consists of four volumes of testimony and exhibits totaling in excess of 1,200 pages. Many of the exhibits are duplicative of other exhibits and pleadings in the record.

By order filed October 4, 2001, the county court approved Lynch's final accounting of the estate and found Cook and Rowland "jointly and sever[ally] personally liable to John E. Lynch for attorney fees and personal representative fees in the amount of $16,300.59." The court also denied a motion to withdraw as counsel filed by Rowland. On October 31, Rowland filed an appeal from this order with the Court of Appeals.

On June 17, 2003, the Court of Appeals released *In re Estate of Reed*, 11 Neb. App. 915, 663 N.W.2d 147 (2003). The only assignment of error considered by the Court of Appeals was Rowland's assertion that the county court was without authority to assess costs against him in his role as Cook's attorney. The Court of Appeals noted that in his amended notice of appeal, Rowland indicated that the appeal was being prosecuted on his own behalf, not on behalf of Cook. Rowland acknowledged in his brief that Cook did not participate in this appeal. Therefore, the Court of Appeals concluded that matters involving Cook's rights were beyond the purview of the appeal.

In the Court of Appeals, Rowland argued that the county court had made no determination that he was personally responsible for any delay in the administration of the estate and that there was no showing that he had authority to act on his own to administer the estate without the consent of Cook. Rowland claimed that as a result, there was no authority to hold him personally responsible for costs associated with administration of the estate.

The Court of Appeals concluded that in his capacity as Cook's attorney, Rowland did not owe the estate any duty to ensure that Cook timely administered the estate and that, therefore, Rowland had no authority to act on behalf of the estate without the direction of his client, Cook. The Court of Appeals noted that its research revealed no authority, nor had Lynch provided authority, for the assessment of costs against an attorney representing a personal representative in an estate proceeding.

The Court of Appeals found that the record did not contain any evidence or a finding that Rowland was personally responsible for the delay in the administration of the estate. It therefore concluded that the county court was without authority to order Rowland to pay the costs incurred by Lynch. The Court of Appeals reversed the judgment of the county court and remanded the cause with directions to "remove Rowland from the county court's judgment." *Id.* at 919, 663 N.W.2d at 150. On the application of Lynch, we granted further review.

### ASSIGNMENTS OF ERROR

In his petition for further review, Lynch assigned the following errors: The Court of Appeals erred (1) in finding no authority for assessing costs against an attorney representing a personal representative in an estate proceeding and (2) in finding that the record contains no evidence that Rowland was personally responsible for delay in the administration of the estate. Lynch asserted that county courts must have authority to ensure that estates are closed within a reasonable period of time.

### ANALYSIS

At the outset, we note that we will not address the removal of Cook as personal representative of Reed's estate because that issue is not before us in this appeal. We also feel obligated to comment on the state of the record presented herein. It is an organizational morass and does not comply with Neb. Ct. R. of Prac. 5B (rev. 2002). Many of the documents contained in the record are not in chronological order. There are numerous duplications of exhibits in the bill of exceptions, and there is no record of the April 6, 1999, hearing regarding Rowland's motion to amend the order of March 10.

On June 18, 1998, this court issued the directive set forth above concerning case progression standards for probate cases. We are now presented with the questions whether the county court had authority, pursuant to this court's directive, to assess costs against Rowland and, if so, whether the county court properly exercised such authority.

Contrary to the Court of Appeals' determination that the county court has no authority to assess costs against an attorney representing a personal representative in an estate proceeding, we conclude that the county court has such authority because of this court's inherent authority to direct inferior courts regarding case progression standards and the manner in which such directives may be enforced.

The Nebraska Supreme Court was created by the state Constitution, which vests the judicial power of the state in a Supreme Court, an appellate court, district courts, county courts, and other inferior courts created by law. See Neb. Const. art. V, § 1. The Constitution provides: "In accordance with rules established by the Supreme Court and not in conflict with other provisions of this Constitution and laws governing such matters, general administrative authority over all courts in this state shall be vested in the Supreme Court and shall be exercised by the Chief Justice." *Id.* This constitutional grant of authority allows this court to establish rules that the inferior courts must follow in managing their dockets.

We have considered the issue of this court's authority on previous occasions. We have stated: "The inherent judicial power of a court is that power which is essential to the court's existence, dignity, and functions." *State v. Joubert,* 246 Neb. 287, 294, 518 N.W.2d 887, 893 (1994), citing *In re Integration of Nebraska State Bar Ass'n,* 133 Neb. 283, 275 N.W. 265 (1937). "Such power is not derived from legislative grant or specific constitutional provision, but from the very fact that this court has been created and charged by the Constitution with certain duties and responsibilities." *Joubert,* 246 Neb. at 294, 518 N.W.2d at 893. The Nebraska Supreme Court has been charged with administering the system of justice by exercising managerial authority over the inferior courts. "Through its inherent judicial power, this court has authority to do all things that are reasonably necessary

for the proper administration of justice, whether any previous form of remedy has been granted or not." *Id.* at 296, 518 N.W.2d at 894. See, also, *State v. Davidson*, 260 Neb. 417, 429, 618 N.W.2d 418, 428 (2000) ("courts are charged with the duty of guarding their proceedings against everything which interferes with the orderly administration of justice"); *In re Complaint Against Jones*, 255 Neb. 1, 7, 581 N.W.2d 876, 883 (1998) ("[t]his court has always had an existing inherent authority over the inferior courts").

In *Noffsinger v. Nebraska State Bar Assn.*, 261 Neb. 184, 189, 622 N.W.2d 620, 625 (2001), we stated that "when the Supreme Court was created, it brought with it inherent powers, i.e., powers that are essential to the existence, dignity, and functions of the court from the very fact that it is a court." The Supreme Court has administrative authority over all inferior courts. It is essential for the Supreme Court, as a part of its inherent authority, to provide inferior courts with case progression standards in order to ensure that cases are properly disposed of in a timely and efficient manner.

In addition, lawyers, as officers of the court, are subject to the directives of the courts. See *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S. Ct. 2004, 44 L. Ed. 2d 572 (1975). Lawyers are required to comply with orders of inferior courts issued in response to this court's directives.

The county court had the authority to enforce this court's directive in regard to Rowland and the Reed estate. The directives issued by this court are an expression of this court's authority to manage inferior courts. Thus, the Court of Appeals erred in concluding that the county court had no authority to order Rowland to pay costs incurred by Lynch in administering the estate.

We next proceed to address whether the county court properly exercised such authority in this case. Today we hold that a court cannot, in enforcing directives of a superior court, deprive a party of legal or substantive rights by acting in an arbitrary or unreasonable manner which is inconsistent with or contravenes principles of general law or constitutional or statutory provisions. Thus, we consider whether the action of the county court in assessing costs was arbitrary and unreasonable.

In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. *In re Trust Created by Martin*, 266 Neb. 353, 664 N.W.2d 923 (2003). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id.*

In the case at bar, the county court ordered the removal of Cook as personal representative and ordered that Cook and Rowland be jointly and severally personally responsible for the costs incurred by Lynch. The record establishes that the county court removed Rowland as the attorney for Cook without a hearing. It did so after Rowland, in his capacity as Cook's attorney, had requested a 90-day continuance and had set forth his plan to attempt to close the estate during this 90-day period.

Before a court may tax costs against the attorney for a personal representative, the court must first determine upon the evidence presented whether any reasons exist for a delay in promptly administering the estate and whether the attorney is personally responsible for such delay in the administration of the estate. The case at bar is devoid of a record of a hearing on this matter. Although the record indicates that Rowland filed a motion to amend the order of March 10, 1999, which assessed costs against Rowland, there is no record of a hearing at which the motion was addressed.

On its face, this court's directive of June 18, 1998, gave the county court authority to act. The directive set forth the conditions which would justify the taxing of costs in a proper case. However, before assessing such costs, a county court should conduct an evidentiary hearing to determine why the attorney for the personal representative did not comply with the orders issued by the court. At such a hearing, the attorney should be given the opportunity to explain the reasons why he or she has been unable to comply with the court's orders. Once the court has been apprised of the facts, it is in a better position to determine a reasonable course of action regarding administration of the estate. The court can then also determine whether costs should be assessed against the attorney for the former personal representative.

An attorney hired to represent a personal representative is employed for the benefit of the personal representative. See *In re Estate of Reed*, 11 Neb. App. 915, 663 N.W.2d 147 (2003). As such, the personal representative is the attorney's client. *Id.* As noted by the Court of Appeals, there was no finding by the county court that Rowland was personally responsible for any delay in the administration of the estate or that Rowland had any authority to act on his own to administer the estate without Cook's approval.

The county court was correct in attempting to follow the directive of this court concerning case progression standards for probate cases. However, the county court acted in an arbitrary and unreasonable manner when it imposed liability for costs on Rowland without first conducting a hearing to determine whether he was personally responsible for any delay in the administration of the estate.

Further evidence of the unreasonableness of the result is demonstrated by the fact that the assets of this estate consisted of approximately $100 in personal property and real estate with a value between $8,000 and $10,000. The real estate was in foreclosure, and it was subject to liens which ultimately amounted to more than $6,300. The real estate was sold for $8,000, and after payment of the mortgage, the balance in the estate was $503.95. Yet, Cook and Rowland were ordered to pay more than $16,300 in costs.

In addition, basic principles of due process require reasonable notice and a fair opportunity to be heard at some stage of the proceedings prior to a final determination. See *Beaman v. Cook Family Foods*, 244 Neb. 431, 507 N.W.2d 462 (1993). Thus, an attorney who serves as counsel for a personal representative has the right to be heard before a court can assess costs against him. Though the required procedures may vary according to the interests at stake in a particular context, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003).

Once it is determined that due process applies, the question remains what process is due. *Id.* The determination of whether the procedures afforded an individual comport with

constitutional requirements for procedural due process presents a question of law. *Newman v. Rehr*, 263 Neb. 111, 638 N.W.2d 863 (2002). In this case, the county court did not provide Rowland with the opportunity to be heard before it found him jointly and severally liable for the costs incurred by Lynch. Thus, we find that Rowland was denied due process.

## CONCLUSION

For the reasons set forth herein, we conclude that county courts have authority to assess costs against an attorney representing a personal representative in an estate proceeding but that the county court in the case at bar erred in assessing costs against Rowland.

That portion of the decision of the Court of Appeals which reversed the judgment of the county court and remanded the cause with directions to remove Rowland from the judgment is affirmed. That portion of the Court of Appeals' decision which held that there is no authority for assessing costs against an attorney representing a personal representative in an estate proceeding is reversed.

AFFIRMED IN PART, AND IN PART REVERSED.

MCCORMACK, J., not participating.