IN RE ESTATE OF WARREN G. MATTESON, DECEASED.
MARY ANNE MATTESON, BY TERESA A. MATTESON
AND JAY RUNYAN, COCONSERVATORS, APPELLEE, V.
TODD W. MATTESON, PERSONAL REPRESENTATIVE OF THE
ESTATE OF WARREN G. MATTESON, DECEASED, APPELLEE,
AND JUDITH A. MCCORMACK, APPELLANT.

675 N.W.2d 366

Filed March 5, 2004.   No. S-02-981.

Roger R. Holthaus, of Holthaus Law Office, for appellant.

Mark J. Milone, of Govier & Milone, L.L.P., for appellee Todd W. Matteson.

James D. Sherrets, Bradford A. Updike, and Brian J. Mathey, of Sherrets & Boecker, L.L.C., for Teresa A. Matteson and Jay Runyan as coconservators for appellee Mary Anne Matteson.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Judith A. McCormack, a devisee of the estate of Warren G. Matteson (Warren), appeals from an order of the county court for Douglas County finding that Mary Anne Matteson (Mary), the former spouse of the deceased, had a valid claim against the estate.

## FACTS

The district court for Douglas County entered a decree on October 13, 1976, dissolving the marriage of Warren and Mary. The decree awarded Warren "as his sole and separate property . . . . all life insurance policies or annuity policies presently owned and in the name of [Warren] and cash surrender value of said policies or annuities." The decree further provided that Warren "shall continue to maintain said policies in full force and effect and shall continue to designate [Mary] as the primary beneficiary and the children as contingent beneficiaries under said life insurance policies until the death or remarriage of [Mary]."

The decree also required Warren to pay alimony in the sum of $100 per month, commencing on October 15, 1976. Such payments were to terminate upon the death of either party, remarriage of Mary, or further order of the court. Custody of the parties' minor children was awarded to Warren, subject to Mary's reasonable visitation rights. The court awarded possession of the marital residence to Warren until both of the minor children of the parties reached the age of majority, married, or became

emancipated. At that time, the residence was to be sold and the net proceeds divided equally between the parties.

On April 23, 1980, the decree was modified due to a stipulated material change in circumstances, and Warren's alimony obligation was reduced to $1 per month from and after the date of the modification order. All other terms and conditions of the divorce decree were specifically stated to remain in full force and effect.

On June 4, 1990, Mary filed a "Satisfaction of Judgement," which provided: "COMES NOW MARY ANNE MATTESON, Respondent herein, and shows to the Court that she has received all monies due to her pursuant to the Property Settlement and the Decree of Dissolution, more specifically being the proceeds for her interest in the [marital] residence . . . ."

Warren died on December 12, 2000, and Todd W. Matteson was appointed the personal representative of his estate. On March 7, 2001, Teresa A. Matteson and Jay Runyan were appointed coconservators for Mary. On April 2, the coconservators filed a claim against Warren's estate on Mary's behalf. The claim alleged that Warren failed to maintain the life insurance policies as specified in the decree, failed to pay alimony due under the decree, and retained certain furniture and personal property belonging to Mary. The personal representative filed a notice of disallowance of the claim on June 14.

On August 9, 2001, the coconservators filed a petition for allowance of claim, alleging that the life insurance policies at issue were valued at $39,000. The personal representative filed a response in which he denied the allegations in the petition and affirmatively alleged that it was barred by laches and equitable estoppel. The response further alleged that the purpose of the life insurance policies was to secure payment for alimony and property settlement amounts and that because the satisfaction of judgment filed June 4, 1990, demonstrated that the property settlement had been satisfied, the life insurance security was no longer necessary.

An evidentiary hearing on the petition was held on May 28, 2002, at which the personal representative, the coconservators, and McCormack appeared personally and through counsel. Various exhibits, including a certified copy of the divorce decree, were offered and received with no objection by any party.

On July 29, 2002, the county court entered an order finding that the undisputed evidence demonstrated that Warren owned life insurance policies totaling $39,000 at the time of the decree. It further found:

> [Mary] is still living, and has not remarried, and thus neither of those conditions, which would have cancelled the decedent's obligation to maintain the life insurance, has occurred. No modification of the decree of dissolution has occurred which has affected that obligation. Consequently, the clear and unrebutted evidence is that the estate of the decedent is obligated to fulfill the obligation [that] was judicially imposed upon him, by paying to [Mary] the sum of $39,000.00, said sum representing the death benefits that [Mary] would have received had the decedent fulfilled his obligation under the decree of the dissolution.

The court also determined that Warren owed delinquent alimony and accrued interest in the sum of $974.55 as of October 23, 2001. The court determined that there was insufficient evidence to support Mary's claims to personal property located at the residence of the decedent.

The personal representative did not appeal, but McCormack filed this timely appeal pursuant to Neb. Rev. Stat. § 30-1601(2) (Cum. Supp. 2002) as a party affected by the final judgment. We moved the appeal to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

McCormack assigns, restated, that the county court (1) erred in finding that the estate owed Mary $39,000 in lieu of the life insurance proceeds pursuant to the decree; (2) erred in finding that the estate owed Mary $974.55 in alimony pursuant to the decree and the modification; (3) exceeded its jurisdiction by modifying the terms of the property division in the divorce decree; (4) erred in finding that Warren's house could be used to satisfy Mary's claims, even though the house was a specific bequest to McCormack; (5) erred by effectuating a lien on the residence because the claims were barred by timeliness and res judicata; and (6) lacked jurisdiction to enter its order.

## STANDARD OF REVIEW

■ An appeal from the county court's allowance or disallowance of a claim in probate will be heard as an appeal from an action at law and, further, in reviewing an action at law, an appellate court reviews the evidence in the light most favorable to the prevailing party. *In re Estate of Wagner*, 253 Neb. 498, 571 N.W.2d 76 (1997). In reviewing the judgment awarded by the probate court in a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *In re Trust Created by Martin*, 266 Neb. 353, 664 N.W.2d 923 (2003); *In re Estate of Krumwiede*, 264 Neb. 378, 647 N.W.2d 625 (2002).

■ In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. *In re Trust Created by Martin, supra*; *In re R.B. Plummer Memorial Loan Fund Trust*, 266 Neb. 1, 661 N.W.2d 307 (2003).

## ANALYSIS

In their brief, the coconservators assert that this court "may not have jurisdiction" because McCormack's original notice of appeal "did not properly perfect an appeal to the proper court." Brief for appellee Mary Anne Matteson at 1. The notice of appeal recites an intent to prosecute an appeal to the "District Court of Douglas County," but the typewritten words "District Court" have been stricken and replaced by "Court of Appeals" in handwriting. It appears that this notice, as amended, was timely filed with the county court, and thus the appeal was properly perfected.

■ We next consider McCormack's argument that the county court lacked jurisdiction to enter the order from which the appeal is taken. The Nebraska Probate Code identifies the county court as the court in this state "having jurisdiction in matters relating to the affairs of decedents." Neb. Rev. Stat. § 30-2209(5) (Cum. Supp. 2002). This jurisdiction extends to "all subject matter relating to . . . estates of decedents." Neb. Rev. Stat. § 30-2211(a) (Reissue 1995). A "Claim" against an

estate includes the liabilities of the decedent, whether arising in contract, tort, or otherwise. § 30-2209(4). The Nebraska Probate Code makes no exclusion for "claims" based on liabilities arising from dissolution of marriage. Thus, a county court has subject matter jurisdiction to resolve a claimed liability of a decedent arising out of a marital dissolution decree.

McCormack argues, however, that the county court lacked jurisdiction to effect what she claims was a modification of the property division in the decree of dissolution as it existed on the date of Warren's death. It is an established principle that a property division in a dissolution of marriage decree from which no appeal is taken is not subject to modification and, ordinarily, will not thereafter be vacated or modified as to such property provisions in the absence of fraud or gross inequity. *Davis v. Davis*, 265 Neb. 790, 660 N.W.2d 162 (2003); *Bokelman v. Bokelman*, 202 Neb. 17, 272 N.W.2d 916 (1979). However, the applicability of this principle depends upon whether the relief sought with respect to a final decree would constitute a modification or simply an enforcement of the provisions of the property division. See *Davis v. Davis, supra*. With this distinction in mind, we consider McCormack's arguments that the county court erred in determining that the estate was liable to Mary in the amount of $39,000, representing the value of life insurance proceeds to which Mary would have been entitled had Warren fulfilled his obligations under the terms of the decree of dissolution.

McCormack argues that Warren's obligation under the original decree to maintain life insurance for the benefit of Mary and his children was subsequently extinguished by (1) the 1980 modification order and (2) the satisfaction of judgment executed by Mary in 1990. McCormack contends that by determining that the estate was liable for the insurance benefits which would have been payable to Mary had the insurance been kept in force, the county court in effect modified the decree of dissolution as it existed on the date of Warren's death. The record does not support this argument. The 1980 modification order reduced the alimony payable under the original decree from $100 to $1 per month, but specifically provided that all other terms and conditions of the decree remained "in full force and effect." The decree does not state, nor does any other portion of the record

establish, that the life insurance requirement was intended to secure Warren's obligation to pay alimony. Thus, the modification of the latter did not affect the former. Similarly, the satisfaction of judgment executed by Mary in 1990 acknowledged receipt of her share from the deferred sale of the marital residence, as ordered in the original decree, but made no reference to the life insurance provisions of the decree. Pursuant to those provisions, no life insurance proceeds would be due Mary unless and until she survived Warren. Thus, the language in the satisfaction of judgment that Mary had "received all monies due to her pursuant to the Property Settlement and the Decree of Dissolution," more specifically described as proceeds from the sale of the marital residence, cannot be construed as a waiver of any subsequent entitlement to life insurance proceeds from the policies which Warren was required to keep in force.

The record therefore supports the finding of the county court that there had been no modification of the decree which affected Warren's obligation, as set forth in the original decree, with respect to life insurance. That being so, the county court correctly concluded that Warren's estate was obligated to fulfill the obligation which was judicially imposed upon him to maintain life insurance naming Mary as the primary beneficiary during his lifetime. The judgment of the county court did not modify this obligation, but simply enforced it. The same is true with respect to the judgment for alimony and accrued interest which was unpaid at the time of Warren's death. The county court's power to enforce judicially imposed obligations which existed on the date of Warren's death flows from its statutory grant of jurisdiction over "all subject matter relating to . . . estates of decedents." § 30-2211(a). For these reasons, we conclude that McCormack's first, second, third, and sixth assignments of error are without merit.

█ In her fourth assignment of error, McCormack contends that the county court erred in finding that Warren's residence, which was specifically devised to her, could be used to satisfy the obligations of the estate. This assignment of error is not argued in her brief, and therefore need not be considered on appeal. See *Loontjer v. Robinson*, 266 Neb. 902, 670 N.W.2d 301 (2003) (to be considered by appellate court, alleged error

must be both specifically assigned and specifically argued in brief of party asserting error).

In her fifth assignment of error, McCormack contends that the county court erred in its order by effectuating a lien on the residence because Mary's claims were barred by timeliness and principles of res judicata and/or collateral estoppel. McCormack's argument in this regard is premised upon Neb. Rev. Stat. § 42-371(4) (Cum. Supp. 2002), which provides that alimony and property settlement award judgments cease to be a lien on real or registered personal property after 10 years. We understand her to argue that because such statutory liens expire after 10 years, any claim based upon a property award in a decree would likewise expire. The fact that a statutory lien has expired does not defeat the validity of the underlying obligation. McCormack's arguments with respect to res judicata and timeliness are based upon the premise that the decree was final and that the county court's order somehow impermissibly modified it. As noted above, however, the county court did not modify but only enforced the obligations arising from the decree which were in effect at the time of Warren's death. McCormack's fifth assignment of error is without merit.

## CONCLUSION

Based on the record before it, the county court did not err in concluding that there had been no modification of the provisions of the decree which required Warren to maintain the life insurance policies naming Mary as primary beneficiary and to pay her $1 per month in alimony. In the proper exercise of its jurisdiction over the estate of the decedent, the county court enforced these judicial obligations by holding the estate liable for their satisfaction. We affirm the judgment of the county court.

AFFIRMED.