IN RE INTEREST OF MICHAEL U., ALLEGED TO BE
A MENTALLY ILL DANGEROUS PERSON.
STATE OF NEBRASKA, APPELLEE, V.
MICHAEL U., APPELLANT.
720 N.W.2d 403

Filed August 1, 2006.   No. A-05-1525.

Bruce E. Stephens for appellant.

C. Jo Petersen, Deputy Hamilton County Attorney, for appellee.

IRWIN, MOORE, and CASSEL, Judges.

CASSEL, Judge.

## INTRODUCTION

Michael U. appeals from the decision of the district court for York County which affirmed the order of the Mental Health

Board of the Fifth Judicial District (Board) finding him to be a mentally ill dangerous person and committing him to involuntary inpatient sex offender treatment. Michael alleges that the Board lacked jurisdiction and venue and erred in receiving certain evidence, that the district court erred in dismissing his appeal from the adjudication order, and that the evidence was insufficient to adjudicate him or to find that inpatient treatment was the least restrictive treatment alternative. We affirm.

## BACKGROUND

On May 16, 1994, the State charged Michael with first degree sexual assault based upon acts committed in Hamilton County, Nebraska, against an individual less than 16 years of age. Michael pled not guilty, was subsequently convicted of the offense, and was sentenced in June 1995 to 80 to 240 months' incarceration. Michael was scheduled to be released from his incarceration at the Omaha Correctional Center (OCC) on May 3, 2005.

On April 28, 2005, the State filed a petition with the Board alleging that Michael was believed to be a mentally ill dangerous person and that neither voluntary hospitalization nor other treatment alternatives less restrictive of Michael's liberty than Board-ordered treatment would suffice to prevent the harm described in the statutes. The petition alleged that Hamilton County was Michael's "legal settlement" at the time he was sentenced to incarceration and that the State did not know where Michael intended to reside upon his release from incarceration. The State attached to the petition a March 17, 2005, letter from Dr. Mark E. Weilage, a clinical psychologist and mental health supervisor at the OCC, wherein Weilage recommended that Michael be reviewed by the Board for postincarceration commitment.

The Board held a hearing on May 10, 2005, and Michael denied the allegations of the petition. Michael's counsel objected to both the jurisdiction and the venue of the matter in Hamilton County and asserted that the proceedings should be dismissed or transferred to Douglas County. The Board overruled the objection. The county attorney offered a certified copy of the documentation from the district court for Hamilton County reflecting Michael's conviction for first degree sexual assault, and Michael's counsel objected to the exhibit as hearsay. The county

attorney limited the offer to the purpose of proving that Michael was convicted of a first degree sexual assault and that the exhibit contained the documents reflecting both the grounds for the conviction and the conviction itself. There was no objection to the offer for that purpose, and the Board received the exhibit on that basis.

Dr. Angela Boykin, a psychologist at Mary Lanning Memorial Hospital, testified that one of her duties was to perform an evaluation of an individual brought to the hospital under emergency protective custody, in order to reach a diagnosis and to determine whether that person needed any sort of psychiatric treatment. Boykin testified that in her job, she would specifically determine whether an individual was mentally ill and dangerous, and that she performed approximately 150 such evaluations each year. Boykin evaluated Michael on May 3, 4, 5, and 9, 2005. Boykin testified that nothing in the personality assessment indicated that Michael was a danger to himself or others. When Boykin was asked her opinion on Michael's mental health status, Michael's counsel objected "on grounds of insufficient foundation." The Board overruled the objection, and Boykin testified that she diagnosed Michael with an unspecified adjustment disorder, a history of a prior diagnosis of pedophilia, and a history of alcohol and marijuana abuse. When Boykin was asked if she determined whether Michael was mentally ill, Michael's counsel stated, "Same objection." The Board overruled the objection, and Boykin answered that "there is a mental illness diagnosis." Boykin opined, without objection, that based on Michael's history, "there is concern about the potential dangerousness, and he needs to be further evaluated by someone with expertise in sex offender issues." Boykin opined that Michael needed further inpatient treatment to determine whether he was dangerous. Boykin testified that in reaching her determination that Michael had a history of pedophilia and was potentially dangerous, she relied on Weilage's March 17 letter, the only documentation she had of that history. She based her opinion partially on that document, as well as on her interviews with Michael. The court received Weilage's letter for the purpose of establishing foundation for Boykin's opinion, and Michael's counsel had no objection to admission of such document for that limited purpose. Weilage's letter stated

that Michael fit the profile of a pedophile and that Michael was serving a sentence for his conviction of first degree sexual assault based upon sexual assaults committed against his 8-year-old stepson over a period of 2 to 3 years. Weilage stated in the letter that according to the initial classification study for the Department of Correctional Services, Michael received treatment from age 6 to 11 for being a victim of sexual assaults, was sexually involved with his sister, appeared to have molested other young children in approximately 1987, and participated in sex offender treatment for 1 year at age 15. Weilage's letter stated that Michael participated in Level I of "the generic correctional Mental Health Program" but that Michael had not been involved in any offense-specific treatment during his incarceration. Weilage's letter also stated that Michael was denied placement in the Inpatient Sex Offender Program at the Lincoln Correctional Center due to his denial of his offense. Boykin testified that she was unsure who diagnosed Michael with pedophilia, but she stated Weilage indicated that Michael would fit the profile of pedophilia and that there was a prior diagnosis of pedophilia.

Boykin prepared a report with regard to her evaluation of Michael, and Michael's counsel raised no objection to its receipt into evidence. The first page of the report discussed Weilage's letter. Boykin wrote that Michael spoke willingly about his history but continued to deny that he engaged in any sexually inappropriate behaviors with his stepson. Michael told Boykin that when he went to court, the only evidence was the allegation of molestation made by Michael's ex-wife and stepson, and that a doctor had said there was no physical evidence of any assault. Boykin's report stated that Michael acknowledged a history of prior sex offender treatment and that it appeared Michael's childhood involved significant sexual abuse, sexual assault, and issues related to sexuality. Boykin stated that Michael said he was sexually molested at age 3 by a cousin approximately 20 years older than Michael and that Michael described engaging in sexual intercourse and activities with cousins as he was growing up. Boykin stated that Michael described engaging in sexual intercourse with his sister, who was 4 years younger than Michael, over a period of a couple years when he was approximately ages 10 to 12 and that Michael indicated sometimes his sister was a

willing participant but "other times he pestered her until she relented." Michael told Boykin that relative to the offenses against his sister, he completed a 9-month sex offender program at the age of 15, and that he felt he benefited from the program. Boykin's report stated that Michael said he had never been sexually attracted to children.

Boykin's report stated that Michael did not complete sex offender treatment while incarcerated, that he was in the first level of a 6- or 12-week program, and that he had a passing score prior to taking the "post test," but that the "post test score" pulled his overall score down below the required passing score. Michael told Boykin that he " 'told the counselor where he could put the program' and did not return." Michael told Boykin that he was unable to get into any offense-specific treatment because he would not admit to the allegations against him and that he would be willing to go through treatment but would not admit to something he did not do.

Boykin wrote that Michael said he had never hit anybody first but had gotten into two fights while he was incarcerated. Michael said that he believed he had a bad temper but that he had only lost his temper twice in his life: when he was young and fought with a peer on a bus and when he argued with his ex-wife—he told her he was going to leave to cool off, but she continued to argue and then hit him, and he hit her in return, breaking her shoulder. According to Boykin, Michael said that he generally avoided being raped while incarcerated "by letting people know that he would stab and would kill them if they did something like th[at] to him."

In a section of the report titled "Mental Status Examination," Boykin wrote that Michael's thought processes were "generally logical and goal directed," that he willingly participated in the interview and answered questions, and that on a couple of occasions, he appeared "to become slightly uncomfortable with talking about some of the issues related to sexual interactions, and would refer in vague ways to imply what he meant, without overtly stating the words." Michael denied any suicidal ideation, and there were no signs of any significant issues related to depression or mood disturbances. Boykin wrote, "It does appear that in the past he has had thoughts of harming people as a result

of the social culture in prison." She stated that Michael described having conflicting feelings about his ex-wife during the early part of his incarceration in that he felt he was still in love with her but also had some thoughts about harming her. However, Michael told Boykin that he did not want to hurt anybody or do anything to hurt his ex-wife, that he wanted to go forward in his life, and that he planned to live with a nephew in Iowa upon release from the OCC.

In the section titled "Treatment Recommendations," Boykin wrote that Michael met the criteria for being a mentally ill dangerous individual, and she recommended that he be held for further evaluation and assessment until the Board held a hearing and appropriate treatment recommendations could be made. Boykin stated that the staff on the behavioral services unit at Mary Lanning Memorial Hospital did not have specific expertise in evaluating sex offenders; thus, she recommended that, at a minimum, Michael be committed to the Lincoln Regional Center for further sex offender evaluation so a determination could be made whether Michael needed to be committed to sex offender treatment. Boykin opined that the least restrictive option for Michael would be further evaluation on an inpatient basis. She testified that she did not have "the expertise to form an opinion specifically about treatment."

The State rested, and Michael's counsel moved to dismiss the petition. The Board overruled the motion. Michael's brother testified that he traveled to Omaha on May 3, 2005, to pick up Michael, with the intent to take Michael to Michael's nephew's house in Iowa.

The Board entered an order on May 13, 2005, and an amended order on May 18, adjudicating Michael. The Board found clear and convincing proof that Michael was a mentally ill dangerous person pursuant to Neb. Rev. Stat. § 71-908(1) (Cum. Supp. 2004). Pursuant to Neb. Rev. Stat. § 71-925(7) (Cum. Supp. 2004), the Board directed that Michael be transported to the Lincoln Regional Center or the Norfolk Regional Center for an inpatient psychiatric and psychological evaluation to include evaluation of sex offender treatment needs, which evaluation was to occur before another hearing was scheduled before the Board to determine the entry of a treatment order. The Board found that

Michael's "legal settlement" at the time he was sentenced to the Nebraska Department of Correctional Services was Hamilton County.

On June 3, 2005, Michael filed an appeal from the May 13 order. It appears that he intended to file the appeal with the district court for Hamilton County, but the file stamp shows that it was filed in the district court for York County. The transcript contains "Judges Minutes" filed June 30 in the district court for York County which stated: "This record on appeal contains no final order. Appeal dismissed & case remanded to the Mental Health Board for further proceedings. Motion to continue appeal hearing mooted by dismissal." Michael did not appeal to this court from the district court's order dismissing the first appeal.

On August 11, 2005, the Board held a hearing on disposition. Michael's counsel objected based on jurisdiction, venue, and the fact that one of the Board members was not a member of the Board which heard the adjudication proceedings.

Dr. Daniel Sturgis, a psychologist at the Norfolk Regional Center, evaluated Michael for the sole purpose of determining the appropriate and least restrictive placement for Michael. Sturgis' evaluation consisted of reviewing Michael's records, interviewing him on several occasions, and administering psychological tests, including an intelligence test and a personality inventory. Sturgis explained that he had two "major interviews" with Michael, several testing sessions, and brief meetings to talk with Michael about his situation or answer Michael's questions. Sturgis opined that Michael should ultimately be placed at the Lincoln Regional Center for its inpatient sex offender treatment program. Sturgis based his recommendation on Michael's conviction for sexual assault on a child, on the conviction's being the second time Michael had "had problems with sexual issues," and on Michael's lengthy prison term. Sturgis testified that "virtually at every major point in [Michael's] life, he had sexual activity with somebody. And oftentimes this was in violation of some sort of rules." Sturgis explained that Michael had an affair with a girl friend, had an affair with that girl friend's sister, and had a sexual relationship with a male friend while Michael was married.

At the hearing, Michael testified that contrary to Sturgis' report, Michael dated one sister, broke up with her, and then

began dating the other sister. He married one of the sisters, and he testified that he did not have sexual relations with the other sister while he was married. Michael admitted having a homosexual encounter on one occasion while he was married. He testified that he was drunk at the time of such encounter, that he felt remorse, and that he told his wife about the incident because he had always been honest with her. Michael testified that before he turned 13 years old, he had experimented sexually with "quite a few" of his cousins and had had intercourse with his sister. At age 15, he participated in a treatment program in Oregon, and Michael testified that since age 13, he had "never done anything with any child." On the other hand, Sturgis explained that Michael's actions showed "his inability to maintain a relationship with one person and to respect the feelings of that person that he's having the relationships with."

Sturgis testified that another factor leading him to choose inpatient treatment for Michael was that Michael had been in some kind of care for most of his life, including foster homes since age 12, a treatment facility in Oregon, and prison. Sturgis testified that Michael did not have a positive history of living a responsible and independent life. Sturgis stated that Michael's "lack of acceptance" of his sexually assaulting his stepson made it difficult for Sturgis to recommend that Michael go to any treatment other than a very secure treatment. Sturgis testified that Michael's significant substance abuse for which he had not had treatment was also a problem. The Board received as evidence Sturgis' June 16, 2005, letter to the Board discussing his evaluation of Michael. Sturgis opined that Michael was a pedophile, of nonexclusive type, and that his general social behavior was highly sexualized.

On August 11, 2005, the Board entered an order of final disposition committing Michael to the Department of Health and Human Services for inpatient treatment. On August 29, Michael filed an appeal from that decision. The district court for York County held a hearing on October 3 and received into evidence the certified transcript from the Board and the bills of exceptions from the Board's hearings. Michael's counsel stated that he had objected at both Board hearings to jurisdiction and venue, had objected to judicially noticing the affidavit in support of an

arrest warrant, and had objected to Boykin's diagnosis and the foundation for her opinion.

On December 7, 2005, the district court entered its judgment on appeal. Upon its de novo review of the record, the district court found clear and convincing evidence that Michael was mentally ill and dangerous and that neither voluntary hospitalization nor other treatment alternatives less restrictive of Michael's liberty than the inpatient treatment ordered by the Board were available or would suffice to prevent the harm described in § 71-908. The district court therefore affirmed the Board's adjudication and treatment order and remanded the matter to the Board for further proceedings.

## ASSIGNMENTS OF ERROR

Michael assigns nine errors. He alleges, consolidated and restated, that (1) the Board lacked jurisdiction and venue, (2) the Board erred in receiving certain evidence, (3) the district court erred in dismissing his appeal from the adjudication order, and (4) the evidence was insufficient to find that he was mentally ill and dangerous or that voluntary hospitalization or alternatives less restrictive than inpatient treatment would not suffice to prevent the harm described in § 71-908.

## STANDARD OF REVIEW

The district court reviews the determination of a mental health board de novo on the record. *In re Interest of Kochner*, 266 Neb. 114, 662 N.W.2d 195 (2003); *In re Interest of Verle O.*, 13 Neb. App. 256, 691 N.W.2d 177 (2005). In reviewing a district court's judgment under the Nebraska Mental Health Commitment Act (Act), appellate courts will affirm the district court's judgment unless, as a matter of law, the judgment is unsupported by evidence which is clear and convincing. *In re Interest of Kochner, supra*; *In re Interest of Verle O., supra*.

## ANALYSIS

*Jurisdiction and Venue.*

Michael asserts that the Board lacked both jurisdiction and venue over this matter. At the beginning of the hearing before the Board on May 10, 2005, Michael's counsel objected "to both the jurisdiction and venue of this matter in Hamilton County,"

and he contended that the proceedings should be dismissed or transferred to Douglas County. Michael's counsel again objected to jurisdiction and venue during the hearing before the Board on August 11 and raised the issue before the district court on October 3.

Jurisdiction is the inherent power or authority to decide a case; venue is the place of trial of an action—the site where the power to adjudicate is to be exercised. *State ex rel. Bauersachs v. Williams*, 215 Neb. 757, 340 N.W.2d 431 (1983). Finding no specific argument in Michael's brief regarding why he believes the Board lacked jurisdiction, we do not address that assignment of error. See *In re Estate of Matteson*, 267 Neb. 497, 675 N.W.2d 366 (2004) (to be considered by appellate court, alleged error must be both specifically assigned and specifically argued in brief of party asserting error).

Michael states in his brief that the Act apparently no longer has a venue provision, but that either Douglas County or Iowa would be the appropriate forum for any Board commitment. Prior to recodification of the Act, see 2004 Neb. Laws, L.B. 1083, § 21 et seq., the venue provision was found at Neb. Rev. Stat. § 83-1025 (Cum. Supp. 2002). Section 83-1025 provided that the petition "shall be filed: [w]ith the clerk of the district court of any county within the judicial district where the subject is found" or that upon the showing of good cause, a district judge of the judicial district where the subject is found may authorize the petition to be filed in another judicial district. In *In re Interest of Adams*, 230 Neb. 109, 430 N.W.2d 295 (1988), the Nebraska Supreme Court held that § 83-1025 was a venue statute.

Presently, the venue provision is found at Neb. Rev. Stat. § 71-921(2) (Cum. Supp. 2004), which provides in pertinent part that the county attorney may file a petition pursuant to the Act

> with the clerk of the district court in any county within: (a) The judicial district in which the subject is located; (b) the judicial district in which the alleged behavior of the subject occurred which constitutes the basis for the petition; or (c) another judicial district in the State of Nebraska if authorized, upon good cause shown, by a district judge of the judicial district in which the subject is located. In such event, all proceedings before the mental health board shall

be conducted by the mental health board serving such other county, and all costs relating to such proceedings shall be paid by the county of residence of the subject.

The petition alleged that Hamilton County was Michael's settlement when he was sentenced by the district court for Hamilton County. The primary basis for the petition was Michael's conviction for sexually assaulting a child, and those acts occurred in Hamilton County. Thus, pursuant to § 71-921(2), the county attorney could file the petition with the clerk of the district court in any county within Hamilton County's judicial district. Hamilton County is located in the Fifth Judicial District, which district also includes the counties of Boone, Butler, Colfax, Merrick, Nance, Platte, Polk, Saunders, Seward, and York. Neb. Rev. Stat. § 24-301.02 (Cum. Supp. 2004). According to the file stamp upon the petition, the Deputy Hamilton County Attorney filed the petition with the clerk of the district court for York County. Because York County is a county within the same judicial district as Hamilton County, venue in York County was proper.

*Dismissal of Appeal From Adjudication Order.*

Many of Michael's assigned errors in this appeal relate to the May 10, 2005, adjudication hearing. Michael appealed to the district court the Board's order adjudicating him to be mentally ill and dangerous and ordering that the sheriff transport Michael to the regional center in either Lincoln or Norfolk for an inpatient psychiatric and psychological evaluation to be conducted before the Board held another hearing to determine final disposition. The district court dismissed the appeal for lack of a final order. An order adjudicating an individual to be a mentally ill dangerous person and ordering him retained for an indeterminate amount of time deprives a person of his liberty, and this denial clearly affects a substantial right. Thus, such order is a final order from which an appeal may be taken. See *In re Interest of Saville*, 10 Neb. App. 194, 626 N.W.2d 644 (2001). It appears that contrary to the district court's ruling, the adjudication order was a final, appealable order; however, Michael did not file a further appeal to this court from the district court's dismissal of the appeal. The district court did not consider the underlying merits of the appeal, but the court's determination

that there was no final order at that time became the law of the case. Under the law-of-the-case doctrine, the holdings of an appellate court on questions presented to it in reviewing proceedings of the trial court become the law of the case; those holdings conclusively settle, for purposes of that litigation, all matters ruled upon, either expressly or by necessary implication. *State v. Gales*, 269 Neb. 443, 694 N.W.2d 124 (2005).

In *In re Interest of Saville*, 10 Neb. App. at 198, 626 N.W.2d at 648, we stated: "Since no appeal was taken from the order adjudicating [the appellant] to be a mentally ill dangerous person, he may not now question the sufficiency of the evidence upon which the Board relied in its adjudication order . . . ." In the instant case, Michael did timely perfect an appeal from the adjudication order, but the first time that the district court considered the issues relating to the adjudication hearing was in the appeal from the dispositional order. Michael has timely perfected an appeal from that order, and he is not precluded from having this court consider the assigned errors arising out of the adjudication hearing.

*Receipt of Evidence.*

Michael asserts that errors of law occurred during the adjudication hearing with respect to the receipt of certain evidence. Neb. Rev. Stat. § 71-955 (Cum. Supp. 2004) provides: "The rules of evidence applicable in civil proceedings shall apply at all hearings held under the . . . Act. In no event shall evidence be considered which is inadmissible in criminal proceedings."

Michael argues that the Board erred in receiving the affidavit in support of an arrest warrant. The county attorney offered a certified copy of the petition from the district court for Hamilton County reflecting Michael's conviction for first degree sexual assault. Michael's counsel objected on the ground of hearsay to a certain page of the exhibit, such page being the deputy county attorney's affidavit in support of an arrest warrant. The county attorney responded it was being offered to prove that Michael "was convicted of a first degree sexual assault, and that those are in fact the documents from the district court reflecting the grounds for that conviction, and the conviction itself." Michael did not interpose any objection to the county attorney's limited

offer. The Board received the exhibit for the purpose stated by the county attorney. There is no indication that the Board accepted or relied upon the affidavit for "the truth of the matter asserted." We conclude that the Board did not err in receiving the affidavit for the purpose stated by the county attorney.

Michael also contends that the Board erred in overruling his objections on foundation to Boykin's opinion as to Michael's mental health and as to whether he was mentally ill. Boykin testified that she was a licensed psychologist, that she had performed mental health evaluations in the past, that she saw Michael on 4 days, and that she performed an evaluation of Michael's mental health. Michael argues that there was insufficient foundation for her opinion because "[t]here was no testimony as to what she did in regards to testing or interviewing [Michael]." Brief for appellant at 11. An expert's opinion is ordinarily admissible under Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 1995), if the witness (1) qualifies as an expert, (2) has an opinion that will assist the trier of fact, (3) states his or her opinion, and (4) is prepared to disclose the basis of that opinion on cross-examination. *State v. Mason*, 271 Neb. 16, 709 N.W.2d 638 (2006). As a licensed psychologist who evaluated Michael, Boykin qualified as an expert, and she had an opinion which would assist the Board. It is within the trial court's discretion to determine whether there is sufficient foundation for an expert witness to give his or her opinion about an issue in question. *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004). We find no abuse of discretion by the Board in receiving Boykin's opinions on Michael's mental health.

*Sufficiency of Evidence.*

Michael's remaining assignments of error attack the sufficiency of the evidence at both the adjudicatory and the dispositional hearings. Before a person may be committed for treatment by a mental health board, the board must determine that the person meets the definition of a mentally ill dangerous person as set out in § 71-908. *In re Interest of Kochner*, 266 Neb. 114, 662 N.W.2d 195 (2003). The Board found that Michael was a mentally ill dangerous person pursuant to § 71-908(1). According to that subsection, a mentally ill dangerous person is one who is

mentally ill or substance dependent and because of such mental illness or substance dependence presents "[a] substantial risk of serious harm to another person or persons within the near future as manifested by evidence of recent violent acts or threats of violence or by placing others in reasonable fear of such harm." *Id.*

Boykin testified that Michael had a mental illness diagnosis and that she diagnosed Michael with an unspecified adjustment disorder, a history of prior diagnosis of pedophilia, and a history of alcohol and marijuana abuse. Michael did not present any evidence to the contrary. Boykin determined that Michael was potentially dangerous and opined that there needed to be further inpatient treatment to determine whether Michael was dangerous.

In determining whether a person is dangerous, the focus must be on the subject's condition at the time of the hearing. *In re Interest of Blythman*, 208 Neb. 51, 302 N.W.2d 666 (1981). Actions and statements of a person alleged to be mentally ill and dangerous which occur prior to the hearing are probative of the subject's present mental condition. *Id.* "In order for a past act to have any evidentiary value[,] it must form some foundation for a prediction of future dangerousness and be therefore probative of that issue." *Id.* at 59, 302 N.W.2d at 671. In determining whether an act is sufficiently recent to be probative on the issue of dangerousness, each case must be decided on the basis of the surrounding facts and circumstances. *In re Interest of Kochner, supra.* There is "no 'definite time-oriented period to determine whether an act is recent. . . .'" *Id.* at 124, 662 N.W.2d at 203.

Michael had been incarcerated since his conviction following a trial and subsequent sentencing in 1995 for first degree sexual assault on a child. Neither the Board nor the district court made a finding as to any specific recent violent act or threat of violence by Michael, although the district court's order indicated that the finding of dangerousness was based on Michael's status as a sex offender. Due to his lengthy incarceration and lack of access to prospective underage victims, Michael has not had an opportunity to commit a more recent act. Considering Michael's sexual history and that he has not completed any offense-specific treatment program while incarcerated due to his denial of the offense, we cannot say as a matter of law that the acts committed over 10

years ago were too remote to be probative of Michael's present state of dangerousness. We therefore conclude that the Board did not err in overruling Michael's motion to dismiss made following the State's rest at the adjudication hearing and that the district court did not err in affirming the Board's decision that Michael was a mentally ill dangerous person.

The Board determined that Michael should be committed for inpatient treatment, and Michael argues that the evidence was insufficient to find that there were not less restrictive treatment alternatives. Sturgis opined that Michael should ultimately be placed at the Lincoln Regional Center for its inpatient sex offender treatment program, and he based his recommendation on Michael's conviction for sexual assault on a child, on the conviction's being the second time Michael had "had problems with sexual issues," and Michael's lengthy prison term. Sturgis also noted that Michael had been in foster homes since age 12, had been in a treatment facility at age 15, and then spent 10 years in prison. Michael offered no evidence regarding less restrictive placements. The district court found in its de novo review that neither voluntary hospitalization nor other treatment alternatives less restrictive of Michael's liberty than inpatient treatment were available or would suffice to prevent the harm described in § 71-908. After reviewing the evidence, we conclude that the district court's decision is supported by clear and convincing evidence.

## CONCLUSION

We conclude that venue in York County, one of the counties of the Fifth Judicial District, was proper. We cannot say as a matter of law that the district court's judgment affirming the Board's adjudication and commitment order is unsupported by clear and convincing evidence. Finding no merit in Michael's other assignments of error, we affirm.

AFFIRMED.